STATE OF CONNECTICUT *v.* GARY C. BERNACKI, SR.
(AC 30176)

Flynn, C. J., and Beach and West, Js.*

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued March 15—officially released July 6, 2010

*Glenn W. Falk*, special public defender, with whom, on the brief, was *Elliot Morrison*, law student intern, for the appellant (defendant).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *Kevin D. Lawlor*, state's attorney, and *Kimberley N. Perrelli*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, Gary C. Bernacki, Sr., appeals from the judgment of the trial court, following a jury trial, convicting him of, and sentencing him for, criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (3) (A)[1] and criminal violation of

___

[1] General Statutes § 53a-217 provides in relevant part: "(a) A person is guilty of criminal possession of a firearm . . . when such person possesses a firearm . . . and . . . (3) knows that such person is subject to (A) a restraining or protective order of a court of this state that has been issued against such person, after notice and an opportunity to be heard has been provided to such person, in a case involving the use, attempted use or threatened use of physical force against another person . . . .

"(b) Criminal possession of a firearm . . . is a class D felony, for which two years of the sentence imposed may not be suspended or reduced by the court."

a protective order in violation of General Statutes § 53a-223 (a).[2] On appeal, the defendant claims that his conviction of, and his punishment for, both of these crimes violates the double jeopardy clause of the fifth amendment to the United States constitution and article first, § 9, of the Connecticut constitution[3] because, as charged, they constitute the same offense. Although we agree that the crimes as charged constitute the same offense, we conclude that the legislature intended to permit multiple punishments for the crimes of criminal violation of a protective order and criminal possession of a firearm. Accordingly, we affirm the judgment of the trial court.

In this case, the charging document provides in relevant part: "Second Count. And the [senior assistant state's] attorney aforesaid further accuses [the defendant] of criminal possession of a firearm and charges

---

[2] General Statutes § 53a-223 provides: "(a) A person is guilty of criminal violation of a protective order when an order issued pursuant to subsection (e) of section 46b-38c, or section 54-1k or 54-82r has been issued against such person, and such person violates such order.

"(b) Criminal violation of a protective order is a class D felony."

[3] "The fifth amendment to the United States constitution provides in relevant part: No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a [g]rand [j]ury . . . nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law . . . .

"Although the Connecticut constitution has no specific double jeopardy provision, we have held that the due process guarantees of article first, § 9, include protection against double jeopardy. . . .

"Article first, § 9, of the Connecticut constitution provides: No person shall be arrested, detained or punished, except in cases clearly warranted by law." (Citation omitted; internal quotation marks omitted.) *State* v. *Tabone*, 292 Conn. 417, 421 n.6, 973 A.2d 74 (2009).

We also note at the outset that "this court [previously] has held that our state constitution does not afford any greater due process rights than those afforded under the federal constitution's double jeopardy clause in analyzing double jeopardy claims arising from multiple convictions and punishments imposed in a single trial." *State* v. *Kurzatkowski*, 119 Conn. App. 556, 568 n.9, 988 A.2d 393, cert. denied, 296 Conn. 902, 991 A.2d 1104 (2010).

that in the [t]own of Shelton on or about August 10, 2005, the said [defendant] possessed a firearm and knew that [he] was subject to a protective order of a [c]ourt of this [s]tate that had been issued against such person, after notice and opportunity to be heard had been provided to such person, in a case involving the use of physical force, attempted use or threatened use of physical force against another person in violation of [§] 53a-217 (a) (3) (A) of the Connecticut General Statutes.

"Third Count. And the attorney aforesaid further accuses [the defendant] of criminal violation of a protective order and charges that in the [t]own of Shelton on or about August 10, 2005, an order issued pursuant to [s]ubsection (e) of [General Statutes §] 46b-38c had been issued against [him,] and [he] violated such order in violation of [§] 53a-223 (a) of the Connecticut General Statutes." The basis of the charge of criminal violation of a protective order was the defendant's possession of a firearm, which specifically is prohibited by anyone against whom a protective order has been issued.

The jury found the defendant guilty of these two charges,[4] and the court sentenced him on count two to a four year term of imprisonment, execution suspended after two years, with four years of probation. On count three, the court sentenced the defendant to a four year term of imprisonment, execution suspended after one year, with four years of probation. The sentences were ordered to run concurrently, for a total effective sentence of four years imprisonment, execution suspended after two years, with four years of probation. This appeal followed.

The defendant claims that his conviction of, and his punishment for, both of these crimes violates double jeopardy because the crimes, as charged, constitute the

[4] The jury found the defendant not guilty of possession of a machine gun in violation of General Statutes § 53-202 (c).

same offense. He requests review of this unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The record on appeal is adequate for review, and a claim of double jeopardy is of constitutional magnitude. See *State* v. *Chicano*, 216 Conn. 699, 704–705, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991). Accordingly, we will review the defendant's claim.

"A defendant may obtain review of a double jeopardy claim, even if it is unpreserved, if he has received two punishments for two crimes, which he claims were one crime, arising from the same transaction and prosecuted at one trial . . . . Because the claim presents an issue of law, our review is plenary." (Internal quotation marks omitted.) *State* v. *Bozelko*, 119 Conn. App. 483, 507, 987 A.2d 1102, cert. denied, 295 Conn. 916, 990 A.2d 867 (2010). "[T]he double jeopardy clause protects [defendants] from multiple punishments for the same offense. To be entitled to this type of double jeopardy protection, the defendant must satisfy both prongs of a two-pronged test. First, the charges must arise out of the same act or transaction. Second, it must be determined [that] the charged crimes are the same offense. . . . In conducting this inquiry, we look only to relevant statutes, the information, and the bill of particulars, not to the evidence presented at trial." (Internal quotation marks omitted.) *State* v. *Kurzatkowski*, 119 Conn. App. 556, 569, 988 A.2d 393, cert. denied, 296 Conn. 902, 991 A.2d 1104 (2010); see *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932) (developing this two-pronged test).

"The application of the *Blockburger* test, however, does not end our analysis of the double jeopardy issue. [T]he *Blockburger* rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history. . . . Double jeopardy protection against cumulative punishments is only designed to

ensure that the sentencing discretion of the courts is confined to the limits established by the legislature. . . . Where . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the same conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial. . . . The *Blockburger* test is a rule of statutory construction, and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent. . . . The language, structure and legislative history of a statute can provide evidence of this intent." (Citations omitted; internal quotation marks omitted.) *State* v. *Greco*, 216 Conn. 282, 292–93, 579 A.2d 84 (1990).

The defendant argues that his conviction and sentence violate his constitutional right not to be placed in double jeopardy because criminal violation of a protective order by the act of possessing a firearm and criminal possession of a firearm, while there is a protective order, punish him for the same acts. The state argues that the two offenses are not the same for double jeopardy purposes because criminal possession of a firearm has possession of a firearm as an element and criminal violation of a protective order does not. In the alternative, the state argues that there was no intent by the legislature to prohibit multiple punishments for the same conduct under these circumstances and that each of these statutes aims to promote different interests. Although we agree with the defendant that the crimes as charged constituted the same offense because he could not have committed one of the crimes without having committed the other, we further conclude that

the legislature intended to provide multiple punishments for the defendant's conduct in possessing a firearm while being subject to a protective order.

In reaching our conclusion, we look to the reasoning of this court's decision in *State* v. *Quint*, 97 Conn. App. 72, 77–83, 904 A.2d 216, cert. denied, 280 Conn. 924, 908 A.2d 1089 (2006), which we find persuasive. In *Quint*, the defendant had been charged with criminal violation of a protective order pursuant to § 53a-223 (a) and with criminal trespass in the first degree in violation of General Statutes § 53a-107 (a) (2). As explained in *Quint*, "§ 53a-107 (a) (2), criminal trespass in the first degree, makes it a crime when a person 'enters or remains in a building or any other premises in violation of a . . . protective order issued pursuant to [General Statutes §§] 46b-38c, 54-1k or 54-82r by the Superior Court . . . .' " Id., 77 n.3. This court explained that criminal violation of a protective order and criminal trespass in the first degree as charged in the *Quint* case constituted the same offense because the defendant could not have committed one of the crimes without having committed the other. Id., 80. We can discern no meaningful difference between *Quint* and the present case.

In the present case, the defendant was charged with criminal violation of a protective order, which stemmed from his possessing firearms in violation of that order, and he was charged with criminal possession of a firearm while subject to a protective order. As in *Quint*, we conclude that the defendant could not have committed one of these crimes without having committed the other. Our inquiry, however, does not end there.

"It frequently happens that one activity of a criminal nature will violate one or more laws or that one or more violations may be charged. Although the question is not totally free of doubt, it appears that the double

jeopardy clause does not limit the legislative power to split a single transaction into separate crimes so as to give the prosecution a choice of charges that may be tried in one proceeding, thereby making multiple punishments possible for essentially one transaction." J. Killian, G. Costello & K. Thomas, The Constitution of the United States of America Analysis and Interpretation (2002) pp. 1386–87. Essentially, there are two types of situations in which a single transaction may be split into separate crimes. "There are 'double-description' cases in which criminal law contains more than one prohibition for conduct arising out of a single transaction. E.g., *Gore* v. *United States*, 357 U.S. 386, 392–93 [78 S. Ct. 1280, 2 L. Ed. 2d 1405] (1958) (one sale of narcotics resulted in three separate counts: [1] sale of drugs not in pursuance of a written order, [2] sale of drugs not in the original stamped package, and [3] sale of drugs with knowledge that they had been unlawfully imported). And there are 'unit-of-prosecution' cases in which the same conduct may violate the same statutory prohibition more than once. E.g., *Bell* v. *United States*, 349 U.S. 81 [75 S. Ct. 620, 99 L. Ed. 905] (1955) (defendant who transported two women across state lines for an immoral purpose in one trip in same car indicted on two counts of violating Mann Act [18 U.S.C. § 2421])." J. Killian, G. Costello & K. Thomas, supra, 1387 n.139.

In the present case, we must determine whether we are dealing with a double-description case in which the legislature has indicated an intent to permit multiple punishments for the relevant crimes. To do this, we must look to the language, structure and legislative history of §§ 53a-217 (a) (3) (A) and 53a-223 (a). See *State* v. *Greco*, supra, 216 Conn. 293.

Initially, we look to the language of §§ 53a-217 (a) (3) (A) and 53a-223 (a). General Statutes § 53a-217 provides in relevant part: "(a) A person is guilty of criminal

possession of a firearm . . . when such person possesses a firearm . . . and . . . (3) knows that such person is subject to (A) a restraining or protective order of a court of this state that has been issued against such person, after notice and an opportunity to be heard has been provided to such person, in a case involving the use, attempted use or threatened use of physical force against another person . . . . (b) Criminal possession of a firearm . . . is a class D felony, for which two years of the sentence imposed may not be suspended or reduced by the court." General Statutes § 53a-223 provides: "(a) A person is guilty of criminal violation of a protective order when an order issued pursuant to subsection (e) of section 46b-38c, or section 54-1k or 54-82r has been issued against such person, and such person violates such order. (b) Criminal violation of a protective order is a class D felony." Reviewing the language of these statutes, we conclude that neither statute contains language barring multiple punishments for the same offense. "We have held that because the legislature has shown that it knows how to bar multiple punishments expressly when it does not intend such punishment . . . the absence of similar language in those statutes provides evidence that the legislature intended cumulative punishments." (Internal quotation marks omitted.) *State* v. *Quint,* supra, 97 Conn. App. 80–81.

Section 53a-217 was enacted by Public Acts 1982, No. 82-464. Subsection (a) (3) of § 53a-217 was added by amendment in 2001 via Public Acts 2001, No. 01-130 (P.A. 01-130), entitled "An Act Concerning Assault Weapons, A Single State Handgun Permit, A Firearms Evidence Databank and Restraining and Protective Orders in Firearms Cases." In part, P.A. 01-130 addressed the act of possessing a firearm by a person who knows he or she is subject to a restraining or protective order. In discussing the proposed bill, Senate

Bill No. 1402, later enacted as P.A. 01-130, Representative Ronald S. San Angelo explained that "[u]nder current law . . . if somebody is under a restraining or protective order, they're required, under state law, to turn in their gun within [forty-eight] hours. That is a requirement under current law." 44 H.R. Proc., Pt. 15, 2001 Sess., p. 5070. Senator Alvin W. Penn explained that the bill, in part, "tightens control over people possessing firearms . . . in violent situations." 44 S. Proc., Pt. 11, 2001 Sess., p. 3229. Although this history is not very informative on the issue of whether the legislature intended multiple punishments in this instance, the history surrounding § 53a-223 is a bit more telling.

Section 53a-223, enacted by Public Acts 1991, No. 91-381, was amended in 2002, via Public Acts 2002, No. 02-127. In discussing the proposed amendment to the statute, Representative Michael P. Lawlor explained that the proposal "changes the existing penalty for the crime of criminal violation of a protective order from a Class A misdemeanor to a Class D felony." 45 H.R. Proc., Pt. 16, 2002 Sess., p. 5191. When asked what impact this change might have on a person's right to carry a firearm, Representative Lawlor explained: "I don't think this amendment . . . impacts . . . that right. The right is already subject, the right to have a firearm is, you don't have that right once you're subject to a restraining order, so this doesn't change that in any way." Id., p. 5194. He further explained: "[T]his does rewrite the domestic violence laws considerably. However, it doesn't change any of the existing firearms laws as they relate to the domestic violence laws. . . . Once you're subject to a restraining order or a protective order, you're not permitted to have a firearm. In fact, you're obligated to turn in your firearm within a relatively short period of time. This doesn't change those laws. However, it is relevant to those laws." Id., p. 5195.

When asked to clarify further the reason for increasing the penalty for a violation of § 53a-223 and how it applied to crimes committed that both violated the protective order and violated another criminal statute, Representative Lawlor explained that both laws would apply in such cases. Representative Kosta M. Diamantis asked: "My question [is] . . . does this particular offense or the consequences of a violation of a protective order apply to both equally?" Id., p. 5199.

Representative Lawlor explained: "Well, in that situation I think the answer is yes, assuming that the specific violation of the protective [order] was a specific order issued by the court." Id. He also stated: A "protective order is only an option after there's been an arrest for a criminal violation. . . . [Y]ou can't engage in conduct which would give rise to a protective order without . . . [a]t least the allegation that you've committed a crime. . . . [There would be] a criminal charge pending and . . . in effect [if you commit another crime, you would] have violated the conditions of your release, one of which now is to abide by a protective order." Id., p. 5204.

Reviewing this history, we are persuaded that the legislature knew of both statutes at issue in this case and that it intended to permit multiple punishments when a person who was subject to a protective order possessed firearms. See General Statutes §§ 53a-217 (a) (3) (A) and 53a-223 (a).

Furthermore, "[a]dditional evidence of the legislature's intent to provide for cumulative punishments [can be evidenced by whether] the statutes set forth separate penalties rather than using a multiplier of a penalty established for another offense." (Internal quotation marks omitted.) State v. Quint, supra, 97 Conn. App. 81. In the present case, neither statute refers to the other, and, although both are defined as class D felonies,

a violation of § 53a-217 carries a mandatory minimum sentence of two years imprisonment that may not be suspended or reduced by the court, and a violation of § 53a-223 does not carry such a mandate.

On the basis of the foregoing, we conclude that the defendant's conviction of, and punishment for, criminal possession of a firearm in violation of § 53a-217 (a) (3) (A) and criminal violation of a protective order in violation of § 53a-223 (a) was consistent with the legislature's intent to provide cumulative punishments for the single act of possessing a firearm in violation of a protective order.[5] The defendant, therefore, has failed to establish that a constitutional violation clearly exists and that it clearly deprived him of a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] Although compiled after the passage of P.A. 01-130, the General Assembly's office of legislative research summary of P.A. 01-130 explains in relevant part: "By law, a family violence offender cannot possess handguns if he knows he is subject to . . . a restraining or protective order, issued after notice and an opportunity to be heard, for using, attempting to use, or threatening to use physical force against someone. If he was issued a permit to carry guns or an eligibility certificate to acquire them, the issuing authority must revoke it. Failure to surrender a permit or eligibility certificate within five days of notification is a class C misdemeanor. He must also transfer any handgun he possesses to the [department of public safety] commissioner within two business days of becoming subject to the order. If he fails to do so, he is guilty of criminal possession of a handgun—a class D felony." Office of Legislative Research, Connecticut General Assembly, Summary of 2001 Public Acts (2001) p. 200.