## STATE OF CONNECTICUT *v.* ELIGIO DELGADO (AC 20155)

Foti, Flynn and Peters, Js.

Argued May 9—officially released July 17, 2001

*William B. Westcott*, with whom, on the brief, was *Michael R. Corsello*, for the appellant (defendant).

*Richard F. Jacobson*, special assistant state's attorney, with whom, on the brief, was *Cornelius P. Kelly*, assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Eligio Delgado, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and risk of injury to a child in violation of General Statutes § 53-21 (2). On appeal, the defendant claims that the trial court improperly denied his motion for a thirty day continuance or mistrial after the state revealed, following the minor victim's testimony and in the middle of the testimony of the victim's mother, that the victim previously had experienced sexual dreams or fantasies. The defendant also claims that the court improperly refused him access to the complaining witness' treatment records in violation of his right to confrontation under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the constitution of Connecticut. We disagree and affirm the judgment of the trial court.

The following factual background is necessary to understand the defendant's claims that the court improperly denied the requested continuance or mistrial. The minor victim's mother was a family friend of

the defendant and his wife. The victim, her sister and their mother often were invited to the defendant's home. The charges against the defendant arose out of allegations that the defendant repeatedly engaged in sexual intercourse with the minor victim between August, 1997, and January, 1998, when he was at her home completing construction work in the basement. The victim was eight years old at that time.

In the late summer of 1997, the victim's mother took her to a physician after the mother noticed an occurrence of vaginal discharge, which she did not believe was normal. After examination, the physician did not find those symptoms remarkable and apparently saw no further need to see or treat the victim. In February, 1998, however, a school nurse learned of the symptoms and advised the victim's mother that the child could not remain in school unless she was seen by a physician. At that time, Pedro Malave, a pediatrician, examined the victim and performed a culture, which showed the presence of a bacterial organism in the victim's vagina. Malave determined that the presence of the bacterial organism in a child of the victim's prepubescent age was an indication that the bacteria had been transmitted through sexual contact. When the mother questioned her, the victim indicated that the defendant had molested her.

During trial, the state commenced its presentation evidence with the testimony of the victim, which was heard fully on July 13, 1999. The victim's mother then took the witness stand. Before her testimony was complete, however, the state informed the court that, at the lunch recess, it had learned for the first time that an undisclosed medical report written by Malave included statements from the victim's mother that the young girl had had some dreams concerning killing people and

sex.[1] The defendant's counsel, at that point, stated that he was at "a distinct disadvantage" because he did not know the content of any of those fantasies or dreams or whether those matters would bear on either the victim's or mother's credibility. He also indicated that he could not tell at that juncture whether the newly discovered information would be the proper subject of cross-examination for the victim or her mother. He did not fault the state for not disclosing the report earlier, indicating that he had no doubt that the state, too, had just learned of it. He then asked the court for "some kind of a postponement or a mistrial . . . ." The court indicated a willingness to permit the defendant "the discretion to cross-examine [the mother] on reporting that information and the source of it, and what its impact was." At that juncture, the court observed that Malave had not yet testified.

Defense counsel indicated that he had no opportunity to consult an expert for assistance in preparing pertinent questions and for dealing with the possible array of answers he might obtain in response. The court responded that there was no prohibition against defense counsel calling the victim's mother as his own witness, if he chose not to cross-examine her. Ultimately, after more dialogue between defense counsel and the court, it became evident that the defendant wanted the court to suspend the case and to wait until defense counsel was prepared to cross-examine the victim's mother. The court offered the defendant, if he wanted, the right to interrupt the state's examination of the victim's mother and to put Malave on the witness stand to inquire about the victim's prior sexual dreams or fantasies, and then to permit counsel to resume questioning

---

[1] The record indicates that the state disclosed that information as soon as it had learned of it. There is nothing in the record, therefore, to indicate that the state had any previous knowledge of the information, and the defendant does not claim otherwise.

the mother, after which the court would make an intelligent appraisal of the situation.

The court next heard Malave's testimony, under oath and outside the jury's presence, concerning the information that the victim's mother had reported to him. Malave testified that the mother had mentioned that, well before the alleged incidents of abuse, the victim had dreams associated with killing people in a situation where sex was involved. Malave indicated that "when we hear something like this, we are concerned about these kind of dreams because we don't really hear that very frequently in a kid." He further testified that one of the first questions that would come to the mind of any pediatrician, when hearing that information, was whether the child had been sexually molested or abused. Malave therefore recommended counseling with a psychologist if the dreams persisted.

After hearing Malave's testimony, the court took a short recess. When the proceedings resumed, the state advised both the court and defense counsel that, during the recess, the mother had advised him that she had taken the victim to Woodfield Family Services (Woodfield) for counseling and that, during a counseling session, the victim had discussed a situation in which a man named Larry purportedly was going to kill the family and engage in sexual activity. At that juncture, defense counsel asked for a thirty day continuance or a mistrial. The court denied defense counsel's request, but left the door open by saying, "I have to know why, and right now it is all smoke and mirrors. We will find out maybe here through questioning. I don't know." The trial continued, and the jury thereafter returned a verdict of guilty on all counts.

I

The defendant first claims that the court improperly denied his request for a continuance or mistrial. We disagree.

We first note that "[t]he determination of whether to grant a request for a continuance is within the discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion." *State* v. *Aillon*, 202 Conn. 385, 394, 521 A.2d 555 (1987). "To prove an abuse of discretion, an appellant must show that the trial court's denial of a request for a continuance was arbitrary." *State* v. *Hamilton*, 228 Conn. 234, 240, 636 A.2d 760 (1994).

Applying those standards to the present case, we conclude that the court did not abuse its discretion in denying the defendant's request for a thirty day continuance. The delay sought was lengthy. Such a delay, which may have involved recalling the minor witness to the stand after a lengthy period of over four weeks, would not be desirable. We also conclude that the court did not act arbitrarily in its determinations. It offered several alternatives to the defendant, short of the requested thirty day continuance or mistrial. The defendant did not explain to the court why a thirty day continuance was necessary, as opposed to some other period of time. Thirty days would have been a lengthy time to hold over the jury.

Further, the defendant has not shown actual prejudice because he could have requested a shorter or more reasonable period of time, but did not do so, and his legal representation appears to have been adequate subsequent to the trial court's ruling on the motion for a continuance. See *State* v. *Bronson*, 55 Conn. App. 717, 723–24, 740 A.2d 458 (1999), cert. granted on other grounds, 252 Conn. 944, 747 A.2d 523 (2000). We again note that the court offered the defendant the opportunity to interrupt the state's examination of the victim's mother so that the defense could question Malave outside the jury's presence, which the defendant did. We also note that, when the state thereafter called Malave as a witness, defense counsel again cross-examined

Malave, but in the presence of the jury, on the same subject matter. Additionally, defense counsel cross-examined the victim's mother, without accepting the court's invitation that he might call her as his own witness. Under those circumstances, we cannot say that the court's rulings substantially impaired the defendant's ability to defend himself.

Similarly, we conclude that the court did not abuse its discretion in denying the defendant's motion for a mistrial. Practice Book § 42-43 governs motions for mistrials in criminal matters. That section provides in relevant part: "Upon motion of a defendant, the judicial authority may declare a mistrial at any time during the trial if there occurs during the trial an error or legal defect in the proceedings, or any conduct inside or outside the courtroom which results in substantial and irreparable prejudice to the defendant's case. . . ." Practice Book § 42-43. It is common that a fact first becomes known during the course of the trial itself. Unless the disclosure of such a fact causes substantial and extreme prejudice to the defendant's case, a court should not declare a mistrial. See *State* v. *Correa*, 241 Conn. 322, 350, 696 A.2d 944 (1997). Here, we already have determined that the defendant failed to show that actual prejudice resulted. We conclude, therefore, that the court properly denied the defendant's motion for a mistrial.

## II

We next address the defendant's claim that the court improperly deprived him of his right to confrontation and the right to present a defense in violation of the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the constitution of Connecticut, when the court refused to disclose the complaining witness' treatment records from Woodfield. This argument is without merit.

On review, we must determine whether the court's decision constituted an abuse of discretion. *State* v. *Walsh*, 52 Conn. App. 708, 722, 728 A.2d 15, cert. denied, 249 Conn. 911, 733 A.2d 233 (1999). When the state learned that the victim had consulted at Woodfield, the state offered to subpoena the records and did so. Thereafter, the state asked the court to review them in camera. A court does not violate the confrontation clause by excluding a defendant's attorney from an in camera review. See *State* v. *Streater*, 36 Conn. App. 345, 354, 650 A.2d 632 (1994), cert. denied, 232 Conn. 908, 653 A.2d 195 (1995). After it had completed the in camera review, the court denied defense counsel's request for access to the records and ordered them sealed.

This court has the responsibility to conduct its own in camera review of the sealed records to determine whether the trial court abused its discretion in refusing to release those records to the defendant. *State* v. *Tyson*, 43 Conn. App. 61, 70, 682 A.2d 536, cert. denied, 239 Conn. 933, 683 A.2d 401 (1996). "While we are mindful that the defendant's task to lay a foundation as to the likely relevance of records to which he is not privy is not any easy one, we are also mindful of the witness' legitimate interest in maintaining, to the extent possible, the privacy of her confidential records." *State* v. *Bruno*, 236 Conn. 514, 531–32, 673 A.2d 1117 (1996). "The linchpin of the determination of the defendant's access to the records is whether they sufficiently disclose material 'especially probative of the ability to "comprehend, know and correctly relate the truth" ' . . . so as to justify breach of their confidentiality . . . ." (Citation omitted.) *State* v. *Storlazzi*, 191 Conn. 453, 459, 464 A.2d 829 (1983). "Whether and to what extent access to the records should be granted to protect the defendant's right of confrontation must be determined on a case by case basis." Id.

At this stage in the proceedings, when the court has reviewed the records in camera, access to the records "must be left to the discretion of the trial court which is better able to assess the probative value of such evidence as it relates to the particular case before it . . . and to weigh that value against the interest in confidentiality of the records." (Citation omitted; internal quotation marks omitted.) Id. Upon our own close examination of the challenged records, we conclude that the court reasonably could have found as it did and that it did not abuse its discretion in denying defense counsel's access to the records.

The judgment is affirmed.

In this opinion the other judges concurred.