## STATE OF CONNECTICUT *v.* JENNIFER JOHNSON
## (AC 33199)

Robinson, Alvord and Flynn, Js.

Argued March 6—officially released September 4, 2012

*Annacarina Jacob*, senior assistant public defender, for the appellant (defendant).

*Melissa L. Streeto*, senior assistant state's attorney, with whom, on the brief, were *Kevin D. Lawlor*, state's attorney, and *Paul O. Gaetano*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The principal issues to be decided in this case are (1) whether the evidence presented sufficed to convict the defendant and (2) what remedy should be given on appeal where the court renders a judgment of conviction of both a crime and a lesser included offense and imposes a separate sentence on both.

On October 25, 2010, in the judicial district of Ansonia-Milford, a jury found the defendant, Jennifer Johnson, guilty of conspiracy to commit possession of narcotics with intent to sell in violation of General Statutes §§ 21a-277 (a) and 53a-48 (a); possession of narcotics in violation of General Statutes § 21a-279 (a); conspiracy to commit possession of narcotics in violation of General Statutes §§ 21a-279 (a) and 53a-48 (a); possession of less than four ounces of marijuana in violation of General Statutes § 21a-279 (c); and possession of drug paraphernalia in violation of General Statutes § 21a-267 (a). The trial court sentenced the defendant on each narcotics charge to five years imprisonment, execution suspended after eighteen months, with three years of probation, to run concurrently. On the charge of possession of less than four ounces of marijuana, the sentence imposed was imprisonment of one year to be served concurrently with the other sentences.

On appeal, the defendant claims that (1) there was insufficient evidence to sustain her conviction of possession of narcotics, conspiracy to possess narcotics, and conspiracy to possess narcotics with intent to sell; (2) separate conspiracy convictions of possession and possession with intent to sell must be reversed because they represent but one agreement and violate the constitutional double jeopardy clause; (3) the court erred in various ways in its instructions to the jury on constructive possession; (4) the trial court erred in failing to disclose all relevant material for cross-examination of the state's principal witness. We agree with the defendant's double jeopardy claim and will grant her relief related to that claim, but otherwise affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Using a confidential informant, Wendy Carroll,

Officer Dedrick Wilcox of the Seymour police department, assigned to the statewide narcotics task force, made three controlled purchases of Roxicodone tablets, described by a state chemist as a synthetic form of opium and containing the active ingredient of oxycodone. In the first and second of these buys, occurring on March 26 and 27, 2008, the defendant handed Carroll green Roxicodone pills in exchange for money. The third controlled buy occurred on April 24, 2008, but this time Tamara Burbridge sold the pills. All three buys occurred at the defendant's second floor apartment, which she shared with Burbridge, at 3 Hill Street in Seymour.

Wilcox applied for a search warrant for the second floor apartment at 3 Hill Street on June 24, 2008, after learning that Burbridge had informed Carroll that she had more prescription pills for sale. Wilcox and Detective Brian Marino executed the search warrant at approximately 6:19 p.m., whereupon they encountered the defendant and Burbridge in their driveway. Wilcox and Marino identified themselves as police officers and explained that they had a warrant to search the premises. Wilcox then patted down the defendant and Burbridge for weapons to ensure the safety of the officers before executing the search. On the defendant, Wilcox discovered a small sum of money and a "bong," a device used to smoke marijuana. On Burbridge, Wilcox discovered a prescription bottle in her name containing forty-six Roxicodone pills. Inside the apartment, the officers seized a wide array of controlled substances. The following seized items are relevant to this appeal: thirteen or fourteen prescription pill bottles in the defendant's and Burbridge's names, a small "dragon box" containing two pills, two prescription bottles containing Roxicodone in Burbridge's name and one prescription bottle containing oxycodone with acetaminophen, sometimes called Percocet, in Burbridge's name. Pursuant to an

arrest warrant, Wilcox arrested Burbridge and the defendant approximately one month after the June 24, 2008 search.

The following procedural history is pertinent. The state charged the defendant with one count each of possession of narcotics with intent to sell on June 24, 2008, in violation of § 21a-277 (a); conspiracy to possess narcotics with intent to sell on June 24, 2008, in violation of §§ 53a-48 (a) and 21a-277 (a); possession of narcotics on June 24, 2008, in violation of § 21a-279 (a); conspiracy to possess narcotics on June 24, 2008, in violation of §§ 53a-48 (a) and 21a-279 (a); possession of less than four ounces of marijuana on June 24, 2008, in violation of § 21a-279 (c); possession of drug paraphernalia in violation of § 21a-267 (a); and two counts of sale of narcotics on March 26 and 27, 2008, in violation of § 21a-277 (a). The jury found the defendant not guilty of possession of narcotics with intent to sell on June 24, 2008, and the two counts of sale of narcotics on March 26 and 27, 2008, but found her guilty on all the remaining counts. This appeal followed.[1]

I

We address first the defendant's claim that the evidence was insufficient to sustain her conviction of possession of narcotics on June 24, 2008, in violation of § 21a-279 (a), conspiracy to possess narcotics on June 24, 2008, in violation of §§ 53a-48 (a) and 21a-279 (a), and conspiracy to possess narcotics with intent to sell on June 24, 2008, in violation of §§ 53a-48 (a) and 21a-277 (a). We do so because if the evidence is insufficient on any of the charges, it would end our inquiry. See *State* v. *Gonzalez*, 74 Conn. App. 580, 593, 814 A.2d 384, cert. denied, 263 Conn. 915, 821 A.2d 771 (2003). We

[1] In her brief, the defendant withdrew any challenge to the sufficiency of the evidence as to her conviction of possession of marijuana and possession of drug paraphernalia.

disagree with the defendant and conclude that the evidence presented at trial sufficed to sustain the convictions.

We begin by setting forth the relevant standard of review. "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a [trier's] factual inferences that support a guilty verdict need only be reasonable.

"As . . . often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than

direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Butler*, 296 Conn. 62, 76–77, 993 A.2d 970 (2010).

A

We turn first to the defendant's claim that the evidence was insufficient to sustain her conviction of possession of narcotics in violation of § 21a-279 (a). The state charged that on June 24, 2008, at approximately 6:20 p.m., at the second floor apartment at 3 Hill Street, the defendant possessed oxycodone and/or codeine in violation of § 21a-279 (a).

Section 21a-279 (a) provides in relevant part that "[a]ny person who possesses or has under [her] control any quantity of any narcotic substance . . . may be imprisoned not more than seven years or be fined not more than fifty thousand dollars . . . ." To sustain a conviction for the crime of possession of narcotics as charged in this case, the state needed to prove that the defendant "possessed" the oxycodone or codeine. General Statutes § 53a-3 (2) defines "possess" as "to have physical possession or otherwise to exercise dominion or control over tangible property . . . ." There are two types of possession, actual possession and constructive possession. *State* v. *Bowens*, 118 Conn. App. 112, 120, 982 A.2d 1089 (2009), cert. denied, 295 Conn. 902, 988 A.2d 878 (2010). Actual possession "requires the defendant to have had direct physical contact with the [contraband]." (Internal quotation marks omitted.) Id., 120–21. "Where . . . the [controlled substance is] not found on the defendant's person, the state must proceed on the theory of constructive possession, that is, possession without direct physical contact. . . . Where the defendant is not in exclusive possession of the premises where the

[controlled substance is] found, it may not be inferred that [the defendant] knew of the presence of the [substance] and had control of [it], unless there are other incriminating statements or circumstances tending to buttress such an inference." (Internal quotation marks omitted.) *State* v. *Winfrey*, 302 Conn. 195, 210–11, 24 A.3d 1218 (2011).

It is undisputed that the defendant did not have oxycodone or codeine on her person at the time Wilcox conducted the search of her residence on June 24, 2008, or at the time of her arrest approximately one month later. It also is undisputed that the defendant did not exclusively possess the premises where the narcotics were discovered because she shared the apartment with Burbridge. Accordingly, the state was required to establish that the defendant constructively possessed the narcotics in order to satisfy the element of possession. "To prove . . . constructive possession of a narcotic substance, the state must establish beyond a reasonable doubt that the accused knew of the character of the drug and its presence, and exercised dominion and control over it." (Internal quotation marks omitted.) *State* v. *Fasano*, 88 Conn. App. 17, 25, 868 A.2d 79, cert. denied, 274 Conn. 904, 876 A.2d 15 (2005), cert. denied, 546 U.S. 1101, 126 S. Ct. 1037, 163 L. Ed. 2d 873 (2006).

The defendant argues that the state failed to establish the requirements of constructive possession pursuant to § 21a-279 (a) because the state did not prove sufficiently that (1) the defendant exercised dominion and control over the narcotics, (2) the defendant knew of the presence of the narcotics and (3) the defendant knew of the illegal character of the narcotics. We disagree and conclude that the evidence sufficed to sustain the defendant's conviction of possession of narcotics on June 24, 2008.

1

We address first the defendant's two arguments that the state did not provide sufficient evidence to prove that the defendant constructively possessed narcotics because she did not (1) exercise dominion or control over the narcotics and (2) did not know of the presence of the narcotics.

The state charged that the defendant possessed oxycodone and/or codeine on June 24, 2008. To that end, the state introduced evidence at trial from which the jury reasonably could have found that the defendant constructively possessed two types of pills containing the active ingredient of oxycodone: Roxicodone and Percocet. From the evidence presented at trial, the jury reasonably could have found that the defendant exercised sufficient dominion and control over the Roxicodone and Percocet pills and knew of their presence, sufficient to satisfy these two elements of constructive possession.

There was evidence from which the jury could have concluded that both the defendant and Burbridge were in the business of selling narcotics from their apartment. As to the Roxicodone pills, Carroll testified at trial that once on March 26 and once on March 27, 2008, she purchased three green pills from the defendant during two separate transactions at the defendant's apartment. Carroll further testified that the defendant handed her the pills and took the money. Wilcox supplemented Carroll's testimony by confirming that the pills from both transactions were Roxicodone. Laura Grestini, a chemist at the toxicology laboratory of the department of public safety, later explained that Roxicodone is a different name for the narcotic oxycodone.

Wilcox further testified that on June 24, 2008, he discovered approximately forty-six pills of Roxicodone

on Burbridge's person as well as two bottles of Roxico-done, prescribed to Burbridge, which he found in the bedroom. The defendant testified that it was her recollection that Burbridge kept Roxicodone pills in their shared apartment in March, April and June, 2008, thereby demonstrating to the jury her knowledge of the presence of the narcotics in her shared apartment at the time the narcotics were seized on June 24, 2008.

This combined testimony allowed the jury to conclude that the defendant actually had the Roxicodone pills in direct physical contact with her person on March 26 and 27, 2008, knew of the presence of the Roxicodone pills in the apartment both at the time of the alleged transactions and when they were seized by the police on June 24, 2008, and was exercising dominion and control over them by transferring them to Carroll in return for money during the March transactions. Although the jury did not find the defendant guilty of the March charges, it reasonably could have inferred that the alleged March transactions, as well as Carroll's testimony that the defendant sold Roxicodone pills to her nephew in the past, sufficed to establish that the defendant, in her joint business of selling narcotics, could exercise dominion and control over the Roxico-done pills at the time they were seized by the police on June 24, 2008.

As to the Percocet pills, which also contain oxyco-done as a constituent element, the defendant testified that she purchased a small purple box to store the prescription pills obtained by her and Burbridge.[2] Wilcox testified that he discovered four loose pills inside the box during the search of the apartment on June 24,

---

[2] The defendant's stated purpose for purchasing the small purple box was not only to store her and Burbridge's prescription pills, but to prevent others from entering the apartment to steal the pills. We note that this is illegal, as prescription medications must be stored in their original container. See General Statutes § 21a-257.

2008. Grestini testified that two of those pills tested positive for Percocet, a narcotic substance containing oxycodone and acetaminophen in combination. Although the defendant testified that she had been prescribed Percocet in the past, she admits in her reply brief that the jury heard no evidence that she possessed a prescription for Percocet at the time the pills were seized on June 24, 2008. The defendant also admits that evidence presented at trial indicated that the two Percocet pills procured from her small purple box, sometimes referred to as the "dragon box," matched the Percocet pills prescribed to Burbridge, as each pill was marked with the number "512." This evidence, if believed by the jury, was sufficient to establish that the defendant, at least concurrently, exercised dominion and control over the Percocet pills that Burbridge placed in the small purple box purchased by the defendant. Furthermore, the evidence established that the defendant knew that Burbridge routinely had placed her prescription medications in the box during the relevant time period when the pills were seized.

The defendant argues, however, that the jury could not have credited Carroll's testimony regarding the March sales of the Roxicodone pills because the jury found the defendant not guilty as to the March charges. Specifically, the defendant argues that her acquittal on the possession with intent to sell charge indicates that the jury discredited Carroll's testimony about the March 26 and 27 Roxicodone transactions and, consequently, the jury reasonably and logically could not have reached the inference that the defendant exercised dominion and control over the Roxicodone based solely on that testimony. We disagree.

In support of our conclusion, we need simply invoke the words of Justice Oliver Wendell Holmes as quoted by Justice Healey in *State* v. *Stevens*, 178 Conn. 649, 653, 425 A.2d 104 (1979): "Consistency in the verdict is

not necessary. Each count in an indictment is regarded as if it was a separate indictment. . . . That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters." (Citation omitted; internal quotation marks omitted.) Additionally, "[i]t is elementary that a trier, whether court or jury, is entitled to credit some portions of a witness' testimony and discredit other portions." *State* v. *Hoyeson*, 154 Conn. 302, 305, 224 A.2d 735 (1966). We therefore conclude that the jury was free to credit portions of Carroll's testimony to reach the inference that the defendant exercised dominion and control over the Roxicodone.

2

We address next the defendant's claim that the state failed to prove that the defendant knew of the illegal character of the narcotics. We disagree because constructive possession under § 21a-279 (a) requires only that the defendant knew of the *narcotic character* of the substance in question. There is no requirement under the statutory terms or applicable precedent that the defendant must have known also of the *illegal character* of the substance. The defendant cites to no Connecticut precedent to support her claim. Instead, she provides only a concurring opinion from the Nebraska Supreme Court as authority. See *State* v. *Minor*, 188 Neb. 23, 29, 195 N.W.2d 155 (1972) (McCown, J., concurring). Such authority is not binding on this court.

"[T]o convict the defendant of [possession of narcotics under § 21a-279 (a)] the state [has] to prove that the defendant . . . possessed a substance that was of a *narcotic* character with knowledge both of its narcotic character and the fact that [she] possessed it." (Emphasis added; internal quotation marks omitted.) *State* v. *Gooden*, 89 Conn. App. 307, 316, 873 A.2d 243, cert.

denied, 275 Conn. 918, 919, 883 A.2d 1249 (2005). Although there is no requirement that the defendant must have known of the illegal nature of the narcotics, we note that General Statutes § 21a-257 carves an exception to the general prohibition on possession of narcotics for persons who are prescribed narcotics and maintain possession of them in their original container. That statute, however, does not authorize "doctor shopping" as an exception, nor possession of narcotics beyond what is immediately medically necessary for the defendant for sale instead to others. See General Statutes § 21a-252 (a) and (i); *State* v. *Levine*, 17 Conn. App. 257, 261–62, 551 A.2d 1271, cert. denied, 210 Conn. 809, 556 A.2d 608 (1989). Because there is no requirement that the state must prove that the defendant knew of the illegal character of the narcotics, the defendant's argument fails.[3]

B

The defendant also claims that there was insufficient evidence to permit a finding that she conspired to possess narcotics, in violation of §§ 53a-48 (a) and 21a-279 (a), and conspired to possess narcotics with intent to sell in violation of §§ 53a-48 (a) and 21a-277 (a). Specifically, the defendant claims that there was insufficient evidence to support a finding by the jury that the defendant (1) formed an agreement with Burbridge, (2) committed an overt act in furtherance of the conspiracy or (3) possessed the required intent that the crimes of possessing narcotics and possessing narcotics with intent to sell be performed. We disagree.

---

[3] Our careful review of the defendant's appellate brief and reply brief reveals that the defendant raises no argument concerning whether the evidence sufficed to prove that she knew of the narcotic nature of the oxycodone. Accordingly, we are not required and decline to undertake an analysis of whether the evidence sufficed to prove the "narcotic character" element of constructive possession.

The state's information specifically alleged that "on or about June 24, 2008 at approximately 6:20 p.m. at 3 Hill street, 2nd floor apartment, in Seymour, Connecticut," the defendant, acting with the intent that conduct constituting the crimes of possession of narcotics and possession of narcotics with intent to sell be performed, agreed with one or more persons to engage in or cause the performance of such conduct. The information further alleged that Burbridge committed the overt acts on that same date, time and location in furtherance of the conspiracy.

Section 21a-279 (a) provides in relevant part that "[a]ny person who possesses or has under [her] control any quantity of any narcotic substance . . . may be imprisoned not more than seven years . . . ." Furthermore, § 21a-277 (a) provides in relevant part that "[a]ny person who . . . possesses with the intent to sell . . . a narcotic substance . . . shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars . . . ." Section 53a-48 (a), our conspiracy statute, provides that "[a] person is guilty of conspiracy when, with the intent that conduct constituting a crime be performed, [s]he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy." The state must prove a clear intent, both to agree, and to commit the underlying crime that is the object of the conspiracy. *State* v. *Liebowitz*, 65 Conn. App. 788, 796, 783 A.2d 1108, cert. denied, 259 Conn. 901, 789 A.2d 992 (2001).

1

We address first the defendant's claims that the evidence was insufficient to permit a finding by the jury that she formed an agreement with Burbridge to possess narcotics and to possess and sell narcotics that were

found on June 24, 2008, in their shared apartment at 3 Hill Street and on Burbridge's person.

"To establish the crime of conspiracy under § 53a-48 . . . the state must show that there was an agreement between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. The state must also show intent on the part of the accused that conduct constituting a crime be performed. The existence of a formal agreement between the parties need not be proved; it is sufficient to show that they are knowingly engaged in a mutual plan to do a forbidden act." (Internal quotation marks omitted.) *State* v. *Padua*, 273 Conn. 138, 181–82, 869 A.2d 192 (2005). "[I]t is not necessary to establish that the defendant and his coconspirators signed papers, shook hands, or uttered the words we have an agreement. . . . [A] conspiracy can be inferred from the conduct of the accused . . . and his coconspirator, as well as from the circumstances presented as evidence in the case." (Internal quotation marks omitted.) *State* v. *Garner*, 270 Conn. 458, 476–77, 853 A.2d 478 (2004).

There was evidence before the jury that during two prior transactions on March 26 and 27, 2008, Burbridge telephoned Carroll announcing that she had prescription pills for sale. On both occasions, Carroll entered the apartment shared by Burbridge and the defendant and spoke with them about buying pills. Although it was Burbridge who told Carroll that she had pills for sale, it was the defendant who then handed Carroll the pills, which later tested positive for oxycodone, in March and took her money in payment for them. This was evidence of the defendant's participation in a narcotics business. Carroll received a similar telephone call on June 24, 2008, when Burbridge told her she had more pills for sale. During a subsequent search

of Burbridge's person and the apartment on that day, Wilcox and Marino discovered forty-six Roxicodone pills in a prescription container bearing Burbridge's name, thirteen or fourteen prescription pill bottles in the defendant's and Burbridge's names, two prescription bottles containing Roxicodone in Burbridge's name and one prescription bottle containing oxycodone with acetaminophen in Burbridge's name. There also was evidence before the jury that Burbridge engaged in what has been called "doctor-shopping" by getting prescriptions for medications containing oxycodone from various doctors, and then having them filled at various pharmacies, within a month of one another, and that, prior to and during the time of the sales to Carroll, both the defendant and Burbridge sold pills containing oxycodone from the apartment they occupied on March 26 and 27, 2008. Finally, Marino testified that when someone is in possession of numerous bottles of Roxicodone and oxycontin, prescribed by various doctors and filled out at different pharmacies at various dates, it is indicative of possession with intent to sell. The combination of testimony about the prior transactions, the large amount of narcotics seized on June 24, 2008, and the discovery of multiple prescriptions filled by different doctors and pharmacies, some of which were in the defendant's name, permitted a reasonable inference by the jury that the defendant engaged in an agreement with Burbridge to conspire to possess and sell narcotics containing oxycodone on June 24, 2008.

2

The defendant claims next that the evidence was insufficient to permit a finding that an overt act was committed in furtherance of the conspiracy. We disagree.

"In a conspiracy prosecution, the government is not limited to proof of only those overt acts charged in the

indictment . . . ." (Internal quotation marks omitted.) *State* v. *Forde*, 52 Conn. App. 159, 169–70, 726 A.2d 132, cert. denied, 248 Conn. 918, 734 A.2d 567 (1999). "An overt act is an essential ingredient of the crime of conspiracy; it may be committed by either coconspirator." *State* v. *Elijah*, 42 Conn. App. 687, 697, 682 A.2d 506, cert. denied, 239 Conn. 936, 684 A.2d 709 (1996).

The state's long form information alleged that the overt act for the conspiracy to possess narcotics charge was the coconspirator Burbridge's possession of a narcotic substance and that the overt act for the conspiracy to possess narcotics with intent to sell charge was Burbridge's possession of narcotics with intent to sell. Our law does not require that each coconspirator commit an overt act. Ample evidence was presented at trial to permit the jury to draw a reasonable inference that Burbridge possessed narcotic substances that contained oxycodone and also possessed them with the intent to sell. Several prescription bottles of narcotic substances that contained oxycodone, prescribed by different doctors and filled at different pharmacies, were found during the June 24, 2008 search of her shared apartment. Additionally, forty-six pills of Roxicodone were found on Burbridge's person. The jury was also free to credit Wilcox's testimony that Carroll told him, sometime during the fourth week of June, 2008, that Burbridge and the defendant had called Carroll and informed her that Burbridge had refreshed her supply of pills. We conclude that the evidence sufficed to establish the existence of an overt act in furtherance of the conspiracy.

3

The defendant claims also that the evidence did not suffice to prove that she possessed the necessary intent to perform or cause performance of the substantive

crimes of possession of narcotics and possession of narcotics with intent to sell. We disagree.

"[T]he question of intent is purely a question of fact. . . . The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proven by circumstantial evidence. . . . Intent may be and usually is inferred from conduct. . . . [I]t is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving circumstantial evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Williams*, 110 Conn. App. 778, 791–92, 956 A.2d 1176, cert. denied, 289 Conn. 957, 961 A.2d 424 (2008).

The state presented sufficient evidence at trial to support an inference that the defendant harbored the necessary intent to perform or cause the performance of the substantive crimes of possession and possession of narcotics with intent to sell. Carroll testified that the defendant and Burbridge had sold pills to Carroll's nephew in the months leading up to the seizure on June 24, 2008. Carroll further described a pattern whereby, on three prior occasions on March 26, March 27 and April 24, 2008, she received a telephone call from Burbridge informing Carroll that she had pills for sale. Although it was Burbridge who initially informed Carroll of the availability of pills for sale, it was the defendant who, during two of the subsequent transactions, actually sold the pills to Carroll when Carroll arrived at the apartment.[4] From April 24 to June 24, 2008, Wilcox

_____

[4] Carroll testified that during the third transaction on April 24, 2008, Burbridge sold her the pills. Carroll further testified that the defendant was present in the apartment at the time of the third transaction but that the defendant was not feeling well and was resting in her bedroom at the time the transaction took place.

conducted surveillance of the 3 Hill Street apartment and observed numerous parties coming in and out of the apartment at all times, which he testified was indicative of drug activity being conducted within the residence. Wilcox testified that, sometime during the fourth week of June, he received a telephone call from Carroll, who revealed that Burbridge and the defendant had informed her that they had "re-upped" their supply of pills. On the basis of this information, Wilcox executed a search warrant for the apartment on June 24, 2008, where he and Marino discovered and confiscated various narcotic substances. The totality of the evidence presented through the aforementioned testimony of Carroll and Wilcox, if believed by the jury, sufficed to establish that the defendant harbored the requisite intent to perform or cause the performance of the crime of possession of narcotics with intent to sell on June 24, 2008.

II

We turn next to the defendant's double jeopardy claim, arising out of the defendant's conviction of and separate sentences for conspiracy to possess narcotics in violation of §§ 53a-48 (a) and 21a-279 (a), and conspiracy to possess narcotics with intent to sell in violation of §§ 53a-48 (a) and 21a-277 (a).[5] On appeal, the defendant argues that both convictions should be reversed. We agree, in part, with the defendant's argument, and remand the case to the trial court with direction to vacate the defendant's conviction of and sentence for conspiracy to possess narcotics, the lesser included

[5] The defendant raises this unpreserved claim under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), which authorizes certain constitutional claims to be made for the first time on appeal. The state does not contest its reviewability, but maintains that *State* v. *Chicano*, 216 Conn. 699, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991), should be followed in determining the remedy to which the defendant is entitled.

offense, and resentence the defendant under the aggregate package theory for her conviction of conspiracy to possess narcotics with intent to sell.[6]

Our standard of review for analyzing constitutional claims such as double jeopardy violations prohibited by the fifth amendment to the United States constitution presents an issue of constitutional and statutory interpretation over which our review is plenary. *State* v. *Bernacki*, 122 Conn. App. 399, 403, 998 A.2d 262, cert. granted on other grounds, 298 Conn. 912, 4 A.3d 833 (2010); *State* v. *Bozelko*, 119 Conn. App. 483, 507, 987 A.2d 1102, cert. denied, 295 Conn. 916, 990 A.2d 867 (2010).

A lesser included offense of a greater offense exists if a finding of guilt of the greater offense necessarily involves a finding of guilt of the lesser offense. See *Rutledge* v. *United States*, 517 U.S. 292, 116 S. Ct. 1241, 134 L. Ed. 2d 419 (1996). A lesser included offense is one that does not require proof of elements beyond those required by the greater offense. See *Brown* v. *Ohio*, 432 U.S. 161, 167–68, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977); "Double Jeopardy," 39 Geo. L.J. Ann. Rev. Crim. Proc. 477 (2010). Because one cannot commit the greater offense of conspiracy to possess with intent to sell narcotics without first committing the lesser offense of merely conspiring to possess without selling, the defendant's conviction of and sentence for this latter offense is violative of double jeopardy principles, and, on appeal, both the state and the defendant agree that the defendant properly could not be sentenced on both convictions. We agree as well.

The state and the defendant disagree as to the remedy, however. The defendant primarily argues that both convictions must be reversed. Yet, in another part of her brief, she asks that one of her convictions be

---

[6] See *State* v. *Wade*, 297 Conn. 262, 271–72, 998 A.2d 1114 (2010).

reversed and vacated, and that the case be remanded to the trial court for resentencing under the "aggregate package theory." The state argues that the lesser offense should be merged with the greater offense pursuant to *State* v. *Chicano*, 216 Conn. 699, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991), and the lesser sentence vacated. We conclude that the defendant's conviction of and sentence for the lesser included offense of conspiracy to possess narcotics must be vacated and the case remanded with direction to resentence the defendant, under the aggregate package theory, for her conviction of conspiracy to possess narcotics with intent to sell.

Prior to the decision in *Chicano*, in which our Supreme Court concluded that multiple punishments had been imposed for the same offense, our Supreme Court set aside the judgment of conviction for one of the offenses, thereby vacating both the conviction and the sentence for that offense. See *State* v. *Rawls*, 198 Conn. 111, 502 A.2d 374 (1985); see also *State* v. *Chicano*, supra, 216 Conn. 720. In *Chicano*, our Supreme Court departed from its prior precedent in *Rawls*, and it adopted the reasoning of the United States Court of Appeals for the Second Circuit in *United States* v. *Osorio Estrada*, 751 F.2d 128, 134–35 (2d Cir. 1984), cert. denied, 474 U.S. 830, 106 S. Ct. 97, 88 L. Ed. 2d 79 (1985), and *United States* v. *Aiello*, 771 F.2d 621, 634–35 (2d Cir. 1985). The court decided that the conviction for the lesser offense should not be vacated on the theory that the role of double jeopardy is to prohibit multiple punishments, not multiple convictions, and where there is no "related sentence or collateral consequences"; *State* v. *Chicano*, supra, 726; the remedy should be to "combine" any lesser included offenses with the greater offenses and vacate the sentence on any lesser included offense. Id., 727.

Six years after our Supreme Court's decision in *Chicano*, adopting the rationale of the Second Circuit in *Osorio Estrada*, the United States Supreme Court rendered its decision in *Rutledge* v. *United States*, supra, 517 U.S. 292. In *Rutledge*, the Supreme Court held: "We need only note that the concern motivating the [g]overnment in asking us to endorse either the Seventh Circuit's practice of entering concurrent sentences on [a continuing criminal enterprise] and conspiracy counts, or the Second Circuit's practice of entering concurrent judgments, is no different from the problem that arises whenever a defendant is tried for greater and lesser offenses in the same proceeding. In such instances, neither legislatures nor courts have found it necessary to impose multiple convictions, and we see no reason why Congress, faced with the same problem, would consider it necessary to deviate from the traditional rule." Id., 306–307. In *Rutledge*, the defendant was found guilty of participating in a conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846 and of conducting a continuing criminal enterprise in violation of 21 U.S.C. § 848. Id., 294. The United States Supreme Court concluded that because the § 848 charge necessarily included a finding that the defendant also participated in a conspiracy in violation of § 846, conspiracy was therefore the lesser included offense. Id. In adhering to the presumption that Congress intended to authorize only one punishment and one conviction, the court ordered that one of the defendant's convictions was unauthorized punishment for a separate offense and that it had to be vacated. Id.

Post-*Rutledge*, the Second Circuit departed from *Osorio Estrada* and has now held that it "violates the double jeopardy clause of the Fifth Amendment" to the United States constitution to continue the practice of combining the lesser included offense and greater offense convictions and that "the Supreme Court in *Rutledge*

instructed that instead, one of the convictions must be dismissed." *United States* v. *Miller*, 116 F.3d 641, 678 (2d Cir. 1997), cert. denied, 524 U.S. 905, 118 S. Ct. 2063, 141 L. Ed. 2d 140 (1998).

We are aware that our Supreme Court and this court have used the approach in *State* v. *Chicano*, supra, 216 Conn. 727, rather than the one espoused by the United States Supreme Court in *Rutledge* v. *United States*, supra, 517 U.S. 306–307. We now follow the *Rutledge* approach for several reasons.

First, the United States Supreme Court has held, in defining its primary role: "The Constitution has imposed upon this Court final authority to determine the meaning and application of those words of that instrument which require interpretation to resolve judicial issues." *Pennekamp* v. *Florida*, 328 U.S. 331, 335, 66 S. Ct. 1029, 90 L. Ed. 1295 (1946). We are therefore bound to follow the decision of the United States Supreme Court.

Second, the *Chicano* approach has been endorsed by our Supreme Court and this court in cases such as *State* v. *Mullins*, 288 Conn. 345, 378, 952 A.2d 784 (2008); *State* v. *D'Antonio*, 274 Conn. 658, 715, 877 A.2d 696 (2005); *State* v. *Padua*, supra, 273 Conn. 172; *State* v. *Nelson*, 118 Conn. App. 831, 856, 986 A.2d 311, cert. denied, 295 Conn. 911, 989 A.2d 1074 (2010); *State* v. *Benjamin*, 86 Conn. App. 344, 352, 861 A.2d 524 (2004); *State* v. *Gonzalez*, supra, 74 Conn. App. 596–97. However, in those cases, *Rutledge* usually has not been distinctly raised. But see *State* v. *Polanco*, 126 Conn. App. 323, 339 n.8, 11 A.3d 188 (declining to address defendant's argument that conviction on the lesser included offense must be vacated), cert. granted on other grounds, 300 Conn. 933, 17 A.3d 69 (2011).

Third, although *Rutledge* decided that there was no congressional intent to impose two convictions and punishment in the *federal* crimes at issue in that case,

reasoning by analogy, we do not believe that our legislature intended to impose two convictions and penalties for the *state* crimes of conspiracy to possess narcotics and conspiracy to possess narcotics with intent to sell. See *State* v. *Mullins*, supra, 288 Conn. 377–79 (separate convictions of possession of narcotics and possession of narcotics with intent to sell violated double jeopardy clause and sentence for possession vacated); *State* v. *Jeffreys*, 78 Conn. App. 659, 681–83, 828 A.2d 659 (conviction of possession of narcotics and possession of narcotics with intent to sell combined and sentence for possession of narcotics vacated), cert. denied, 266 Conn. 913, 833 A.2d 465 (2003); *State* v. *Gonzalez*, supra, 74 Conn. App. 582, 594–97 (separate conspiracy convictions of possession of narcotics and possession of narcotics with intent to sell combined and lesser sentence vacated because sentencing on both counts violated defendant's right against double jeopardy).

In this case, the defendant was charged with and convicted of separate offenses for conspiracy to possess narcotics in violation of §§ 21a-279 (a) and 53a-48 (a), and conspiracy to possess narcotics with intent to sell narcotics in violation of §§ 21a-277 (a) and 53a-48 (a). Because one cannot commit the greater offense of conspiracy to possess narcotics with intent to sell without first committing the lesser offense of conspiring to possess narcotics, one of the convictions must be vacated in order to comport with the fifth amendment prohibition against double jeopardy as explained by the United States Supreme Court in *Rutledge*. Accordingly, we remand the case for the trial court to vacate the conviction of and sentence for conspiracy to possess narcotics.

We also conclude that the court should resentence the defendant for her conviction of conspiracy to possess narcotics with intent to sell under the aggregate package theory. "Pursuant to that theory, we must

vacate a sentence in its entirety when we invalidate any part of the total sentence. On remand, the resentencing court may reconstruct the sentencing package or, alternatively, leave the sentence for the remaining valid conviction . . . intact." *State* v. *Miranda*, 274 Conn. 727, 735 n.5, 878 A.2d 1118 (2005). Additionally, when "a multicount conviction is remanded after one or more of the convictions have been vacated on appeal, the trial court may increase individual sentences on the surviving counts as long as the total effective sentence is not exceeded"; *State* v. *Wade*, 297 Conn. 262, 268, 998 A.2d 1114 (2010); which, in this case, was a total effective sentence of five years. Accordingly, we instruct the trial court to resentence the defendant in accordance with the parameters set forth under the aggregate package theory. On remand, the trial court is not to construct a sentencing package that exceeds a total effective sentence of five years imprisonment.

## III

The defendant also claims that there was clear instructional error in the court's charge as given concerning both constructive possession and concurrent or nonexclusive possession on which the defendant had made a specific request to charge. The defendant claims that the court, in its charge to the jury, violated her due process rights under the fifth, sixth and fourteenth amendments to the United States constitution, and article first, § 8, of the constitution of Connecticut because the charge failed to instruct the jury properly as to nonexclusive possession and the dominion and control element of constructive possession, on which she had submitted her request to charge. The defendant argues that the court's charge was harmful because it "diluted the state's burden of proof on the element of possession" by failing to instruct that the defendant's exercise of dominion and control over the narcotics must be both

knowing and intentional to satisfy the requirements of constructive possession.[7]

The defendant argues that her claim is preserved for appellate review, pursuant to Practice Book § 42-16, because defense counsel filed a request to charge with the specific language that she now claims improperly was omitted from the final charging instructions issued to the jury. The state contends that, although the defendant submitted a request to charge containing an instruction on nonexclusive possession and more comprehensive language regarding constructive possession than those provided by the trial court, her failure to satisfy her obligation to object to various drafts of the instructions, as well as her failure to take exception to the charge as ultimately given, negated her earlier request. Consequently, the state argues that the defendant's words and conduct constituted implicit waiver under *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011).

The state's argument is grounded in the doctrine of implicit waiver as set forth in *State* v. *Kitchens*, supra, 299 Conn. 482–83. "[W]hen the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal." Id. "[R]eviewing courts in Connecticut have good reason to conclude

---

[7] The defendant also argues that the court committed error by failing to instruct that the defendant must have knowledge of the illegal character of the oxycodone. This argument is unavailing because knowledge of the illegal character of the narcotics is not a required element of constructive possession or possession of narcotics pursuant to § 21a-277 (a). See part I A 2 of this opinion.

that counsel knowingly and intentionally waived the right to challenge a jury instruction when the trial court has provided the parties with a meaningful opportunity to review and discuss the instructions, to request changes or modifications before and after the instructions are given, and to comment on the instructions while there is still time to correct them." Id., 494.

Following our careful review of the record, we agree with the state that the defendant implicitly waived her claim. On the first day of trial, the court asked the parties to submit their requests to charge. The next day, the defendant submitted a written request to charge that included an instruction on nonexclusive and constructive possession.[8] On the third day of trial, the court gave the parties a preliminary rough draft of its proposed jury charge, which it modeled on criminal jury instructions from the judicial branch website, indicating that it was "a very good outline of what the court would expect to charge on." The court explicitly told the parties to "look at it with an eye toward telling [the court] if there's anything [the parties] object to or would request to be changed." Later that day, in response to a direct query by the court whether counsel had "[a]ny concerns" about the proposed charge, defense counsel

[8] The defendant requested that the jury be instructed on constructive possession as follows: "Possession does not mean that one must have the illegal substance and/or object upon one's person. Rather, a person who . . . knowingly has the power and intention at a given time to exercise dominion or control over a thing is deemed to be in constructive possession of that item. It means having something under one's control or dominion. As long as it is or was in a place where the defendant could, if he wishes, go and get it, it is in his possession and that possession is illegal if the defendant knew of the unlawful character of the . . . narcotics and knew of its presence. . . .

"If it is proven that the defendant is the exclusive owner of the premises, then you may infer that he controlled the premises. However, when it is shown that ownership or occupancy of the premises is shared, you may no longer make this inference. The ability to control the premises must be established by independent proof." (Internal quotation marks omitted.)

informed the court that his only issue with the charge was that it did not address inconsistent statements as to witnesses Carroll and Wilcox. After the completion of closing arguments that same day, the court distributed a revised charge to the parties that addressed defense counsel's request as to inconsistency as well as a section regarding the defendant's decision to testify. The court asked the parties to review the charge overnight and to be prepared to bring to its attention, the following morning, any issues that the parties might have.

The next morning, the court asked the parties if they had reviewed the revised charge and had any objections to its contents. Defense counsel stated that he had no objections to the charge and thanked the court for including the impeachment and inconsistent statement charge that he had requested. The court then informed the parties that it would reprint the charge with the agreed upon revisions and that this version of the charge would go to the jury. Although this final draft did contain an instruction on constructive possession, it did not mirror the defendant's original requested charge and contained no instruction as to nonexclusive possession.[9] See footnote 8 of this opinion. At no point during

[9] As to count one, possession with intent to sell a narcotic substance, the court instructed that the state had to prove beyond a reasonable doubt that "the defendant knowingly possessed with intent to sell a narcotic substance." The court then instructed the jury concerning the elements of constructive possession as follows: "Possession means actual possession or constructive possession. . . . Constructive possession means having the substance in a place under one's dominion and control. Constructive possession may be exclusive or shared by others. The latter is known as joint possession.

"Possession, whether actual or constructive, also requires that the defendant knew that she was in possession of . . . oxycodone; that is, that the defendant was aware . . . of the nature—its nature. The state must prove beyond a reasonable doubt that the defendant knew she was in possession of oxycodone. . . .

"Ordinarily, knowledge can be established only through an inference from other proven facts and circumstances. The inference may be drawn if the circumstances are such that a reasonable person of honest intention in the situation of the defendant would [have] concluded that the oxycodone pills were a narcotic substance. The determinative question is whether the cir-

any of the proceedings did defense counsel orally object that the court's proposed charge was deficient concerning its instructions on constructive possession, nor did he raise any concerns about the constructive possession charge or lack of a nonexclusive possession charge in response to the court's express solicitation for any comments or concerns regarding the proposed instructions.

Despite the record's clear indication that the court provided defense counsel with a copy of the proposed instructions, allowed a meaningful opportunity for him to review those instructions overnight, solicited comments from him regarding any changes or modifications, and that the defendant affirmatively accepted the instructions without any reference to constructive possession, the defendant nonetheless argues that her instructional error claim is preserved simply because counsel filed a request to charge in accordance with Practice Book § 42-16. We disagree. Although the defendant filed a request to charge, her failure to object to various drafts of the instructions combined with her

cumstances in the particular case form a basis for a sound inference as to the knowledge of the defendant . . . ."

As to count three, illegal possession of a narcotic substance, the court repeated much of its earlier instruction on possession: "[T]o find the defendant guilty of [the] charge [of possession of narcotics], the state must prove beyond a reasonable doubt that the defendant knowingly possessed or had under her control oxycodone. . . . Possession . . . means either actual or constructive possession. Actual possession means actual physical possession . . . constructive possession means having the object in a place under one's dominion and control. Remember . . . possession requires knowledge on the part of the defendant . . . that she was aware that she was in possession of it and was aware of its nature. Recall and apply my full prior instruction on possession here.

"In summary, the state must prove beyond a reasonable doubt that the defendant knowingly possessed oxycodone." Finally, as to count two, conspiracy to commit possession of narcotics with intent to sell; count four, conspiracy to commit possession of narcotics; and count five, possession of less than four ounces of marijuana; the court explicitly instructed the jury to recall its earlier instructions regarding possession.

affirmative acceptance of them negated her earlier request. See *State* v. *Mungroo*, 299 Conn. 667, 672–77, 11 A.3d 132 (2011); *State* v. *Bharrat*, 129 Conn. App. 1, 16 n.8, 20 A.3d 9, cert. denied, 302 Conn. 905, 23 A.3d 1243 (2011). We hold that Practice Book § 42-16, permitting a defendant to preserve an issue for later appeal by filing a formal request to charge, must be read in conjunction with the holding in *State* v. *Kitchens*, supra, 299 Conn. 482–83. We hold that post-*Kitchens*, where defense counsel formally acquiesces to a charge that he has had an adequate opportunity to review, he waives on behalf of the defendant any later appellate claim that might have otherwise been preserved by an earlier request to charge. See also *State* v. *Paige*, 304 Conn. 426, 443, 40 A.3d 279 (2012). Accordingly, we conclude that the defendant waived her claim of an improper jury instruction.

## IV

The defendant claims finally that the court, after its in camera review of confidential documents, failed to disclose to the defendant's counsel all relevant material for cross-examination that he had subpoenaed under seal.

The record reveals that dialogue took place between the court and the prosecution and defense counsel about confidential medical and treatment records that had been subpoenaed under seal to the court. The court first determined that Carroll consented to an in camera inspection of her records by the court and had agreed to testify. The court announced that it would make an examination of the documents for any relevant material "for the purposes of cross-examination." That included, as the court told counsel, "any material" relevant to the "capacity of the witness to observe, relate—and that will be at the time of the alleged controlled buys" in March and April, 2008, as well as the capacity of the

witness at the time of trial. Neither the state nor defense counsel expressed any objection to the court's proceeding in the manner it outlined.

The court first addressed records from the New Era Rehabilitation Center. It found that those began in October, 2009, and continued through the date of trial. The court found no record relating to any dates in 2008, when Carroll reported the drug activity at the 3 Hill Street apartment in March, April and June of that year.

Our standard of review in determining whether a court properly conducted an in camera review of confidential records is abuse of discretion. See *State* v. *Gainey*, 76 Conn. App. 155, 158, 818 A.2d 859 (2003); *State* v. *Walsh*, 52 Conn. App. 708, 722, 728 A.2d 15, cert. denied, 249 Conn. 911, 733 A.2d 233 (1999). On appeal, "[t]his court has the responsibility to conduct its own in camera review of the sealed records to determine whether the trial court abused its discretion in refusing to release those records to the defendant. . . . While we are mindful that the defendant's task to lay a foundation as to the likely relevance of records to which he is not privy is not [an] easy one, we are also mindful of the witness' legitimate interest in maintaining, to the extent possible, the privacy of her confidential records. . . . The linchpin of the determination of the defendant's access to the records is whether they sufficiently disclose material especially probative of the ability to comprehend, know and correctly relate the truth . . . so as to justify breach of their confidentiality . . . . Whether and to what extent access to the records should be granted to protect the defendant's right of confrontation must be determined on a case by case basis." (Citations omitted; internal quotation marks omitted.) *State* v. *Delgado*, 64 Conn. App. 312, 319, 780 A.2d 180 (2001), aff'd, 261 Conn. 708, 805 A.2d 705 (2002).

"At this stage in the proceedings, when the court has reviewed the records in camera, access to the records must be left to the discretion of the trial court which is better able to assess the probative value of such evidence as it relates to the particular case before it . . . and to weigh that value against the interest in confidentiality of the records." (Internal quotation marks omitted.) Id., 320.

The sixth amendment to the United States constitution, as well as article first, § 8, of the constitution of Connecticut, guarantees "the right of an accused in a criminal prosecution to be confronted with the witnesses against him. . . . The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination. The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct putting of questions and obtaining immediate answers." (Citations omitted; internal quotation marks omitted.) *State* v. *Esposito*, 192 Conn. 166, 178–79, 471 A.2d 949 (1984). "Although the confrontation right is not absolute and is subject to reasonable limitation; *State* v. *Vitale*, 197 Conn. 396, 401, 497 A.2d 956 (1985); there is, nevertheless, a minimum level of cross-examination that must be afforded to the defendant into matters affecting the reliability and credibility of the state's witnesses. *State* v. *Milum*, 197 Conn. 602, 609, 500 A.2d 555 (1985)." *State* v. *Slimskey*, 257 Conn. 842, 858, 779 A.2d 723 (2001).

The "cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit the witness." *Davis* v. *Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974). The right of a criminal defendant to

impeach an adverse witness is constitutionally guaranteed. "In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." (Internal quotation marks omitted.) *State* v. *Valentine*, 240 Conn. 395, 407, 692 A.2d 727 (1997).

After carefully examining the records subpoenaed by the defendant and those disclosed, we conclude that the court did not abuse its discretion in limiting access to the challenged records.

The judgment is reversed only as to the conviction of conspiracy to possess narcotics and the case is remanded with direction to vacate both the conviction and the sentence on that charge; the judgment is affirmed as to the conviction of conspiracy to possess narcotics with intent to sell, but the sentence is vacated and the case is remanded for resentencing on that charge in accordance with the aggregate package theory guidelines set forth in *State* v. *Wade*, supra, 297 Conn. 271–72. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.