40 A.3d 279 (2012)
304 Conn. 426
STATE of Connecticut.
v.
Sheri PAIGE.
No. 18495.
Supreme Court of Connecticut.
Argued February 2, 2012.
Decided April 17, 2012.
*280 Alexander H. Schwartz, Southport, for the appellant (defendant).
Marjorie Allen Dauster, senior assistant state's attorney, with whom, on the brief, were Kevin T. Kane, chief state's attorney, John H. Malone, senior assistant state's attorney, and Maura K. Coyne, assistant state's attorney, for the appellee (state).
PALMER, ZARELLA, McLACHLAN, EVELEIGH, HARPER and VERTEFEUILLE, Js.
HARPER, J.
Following a jury trial, the defendant, Sheri Paige, then an attorney, was convicted of nine charges relating to the theft of assets from an elderly client, including one count of perjury in violation of General Statutes § 53a-156.[1] The defendant appealed *281 from the judgment of conviction to the Appellate Court, challenging the sufficiency of the evidence and the propriety of the jury instruction on the perjury charge. State v. Paige, 115 Conn.App. 717, 720, 727 n. 4, 974 A.2d 782 (2009). The Appellate Court concluded that there was insufficient evidence to convict the defendant on two of the larceny counts, but affirmed the judgment in all other respects. Id., at 752, 974 A.2d 782. With respect to the perjury instruction, although the defendant had submitted a request to charge the jury that it must decide whether a particular statement at issue was material and the state had conceded that it was improper for the trial court to have instructed the jury that the state had proven this element as a matter of law, the Appellate Court determined that the defendant had waived her right to challenge the instruction that was given. Id., at 746, 974 A.2d 782. This court thereafter granted the defendant's petition for certification to appeal limited to the issue of whether "the Appellate Court properly determine[d] that the defendant [had] waived any challenge to the jury instruction regarding the materiality of the defendant's testimony at a deposition. . . ." State v. Paige, 294 Conn. 911, 983 A.2d 275 (2009). We conclude that the defendant did not waive her right to challenge the instruction and, therefore, we reverse the judgment in part.
The Appellate Court's opinion sets forth in substantial detail the facts that the jury reasonably could have found to support the various charges of which the defendant was convicted. See State v. Paige, supra, 115 Conn.App. at 720-27, 974 A.2d 782. For purposes of the issue in the present case, we briefly summarize those facts. In 1999, Kriemhilde Byxbee, then a widow and eighty-four years of age, lived alone in her home in Stamford. Byxbee had suffered a stroke and was unable to care for herself but did not want to leave her home. Following the stroke, she had increased difficulty understanding what was going on around her. Beverly Cogswell and Heidi Hemingway, both of whom had been cleaning Byxbee's house for many years prior to the death of Byxbee's husband in 1997, thereafter assumed additional duties that enabled Byxbee to remain in her home. In April, 1999, Cogswell and Hemingway asked the defendant, with whom Hemingway had had prior legal dealings, to come to Byxbee's house to discuss having Byxbee execute a living will. The defendant met with Byxbee at her home and subsequently prepared a living will, which Byxbee signed.
After that meeting, the defendant asked Hemingway about Byxbee's assets. Learning that Byxbee owned two properties in addition to her home and did not have any children, the defendant advised Hemingway that Byxbee should execute a will so that Hemingway could "get something out of . . . Byxbee for . . . services rendered." The defendant arranged for another attorney to come to Byxbee's home to draft a new will, which Byxbee executed. The new will made Hemingway and Cogswell the sole beneficiaries of Byxbee's estate.
The defendant thereafter concocted various schemes whereby, with the aid of Hemingway and Cogswell, they would deplete Byxbee's assets, without Byxbee's *282 knowledge, purportedly to avoid estate taxes. The defendant directed Cogswell and Hemingway to trick Byxbee into writing checks to various individuals who later would cash the checks and give the money to Hemingway or Cogswell. At the defendant's instruction, Byxbee's money market account was closed and approximately $200,000 of those funds was distributed to Hemingway, Cogswell and the defendant. The defendant also arranged for Byxbee to purchase a $400,000 life insurance policy, despite Byxbee's refusal to purchase such a policy. The defendant established the Kriemhilde Byxbee life insurance trust (Byxbee trust), naming herself as trustee, to receive the proceeds of the insurance policy. In the last year of Byxbee's life, the defendant facilitated the sale of the three properties Byxbee owned, including the sale of Byxbee's residence, furniture and personal effects after Byxbee had been moved into an assisted living facility following a period of hospitalization. The proceeds from those sales were distributed in part to the defendant, Hemingway and Cogswell, either directly or through family members, and in part to either Byxbee's bank account or the Byxbee trust.
After Byxbee died on September 27, 2000, the defendant persuaded Cogswell and Hemingway that the insurance company would resist paying out the $400,000 policy on Byxbee's life and that they should hire her to represent them in collecting on it in exchange for 25 percent of the proceeds recovered from the policy. Shortly thereafter, the insurance company paid out the policy and returned the premium. The defendant then wrote checks from the Byxbee trust payable to the bank that held the mortgage on the defendant's house in amounts corresponding to the legal fees charged by the defendant and the 25 percent contingency fee for recovery of the insurance policy proceeds and premium.
Subsequently, Hemingway learned from the defendant that the Byxbee trust account had been nearly depleted. In November, 2001, Hemingway and Cogswell filed an application for a prejudgment remedy against the defendant seeking to recover the funds she had taken from the Byxbee trust account. The accompanying complaint alleged larceny, conspiracy, conversion, legal malpractice, breach of a fiduciary duty, tortious interference with an expectancy or inheritance, breach of contract, and violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. Cogswell v. Paige, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-01-0186822S, 2003 WL 21297606 (May 22, 2003) (34 Conn. L. Rptr. 683).
The record reveals the following additional facts and procedural history. During trial in the civil litigation, the defendant proffered a letter, dated a few weeks prior to receipt of payment on the life insurance policy, purportedly from the insurance company stating its intention to rescind the policy due to Byxbee's failure to "fully disclose material medical conditions on her insurance application." The trial court, D'Andrea, J., found that the letter was fraudulent, prepared by or at the direction of the defendant for the purpose of attempting to justify the 25 percent contingency fee she had received. Id. The court ultimately denied the application for a prejudgment remedy on the ground that Cogswell and Hemingway were complicit in the defendant's criminal schemes to defraud Byxbee and stated its intention to refer the matter to both the state's attorney's office and the statewide grievance committee. Id.
Thereafter, the defendant was charged in the present criminal case with, inter alia, five counts of larceny in the first *283 degree and one count of larceny in the second degree. The state also charged the defendant with three counts of perjury relating to statements made during or in connection with the civil litigation (counts one, two and three of the substitute information). Count two alleged that the defendant knowingly had testified falsely in a deposition about the source of the letter from the insurance company purporting to rescind the policy on Byxbee's life. After the close of the state's case, the defendant moved for a directed verdict on various counts. On March 9, 2006, the trial court, Holden, J., granted the defendant's motion for a judgment of acquittal on counts one and three, but denied the defendant's motion on count two and the other counts.
At the close of trial, the court instructed the jury with respect to count two that the state must prove specific elements to meet its burden of establishing that the defendant had committed perjury, one being that the statement made by the defendant was material. The court then stated: "[T]hat is a matter of law. The test of materiality is whether the false statement testimony was capable of influencing or had the potential to influence the fact finder in deciding the issues. . . . [A]s a matter of law I will tell you that it was material, so at least you don't have to concern yourself when you get to that element; it's a matter of law, the testimony was material, and that it was capable of influencing or had the potential to influence the fact finder." Later, when restating the elements of perjury, the court again instructed the jury that "whether or not the testimony was material, [that is] not for your consideration. That you will find as a matter of law."
The jury returned a verdict of guilty on nine of the ten counts that were submitted to it, including count two alleging perjury. See footnote 1 of this opinion. After trial, the defendant filed another motion for a verdict of acquittal on count two and two other counts charging larceny in the first degree, as well as a motion for a new trial, both of which the court denied. The trial court thereafter rendered judgment in accordance with the verdict and sentenced the defendant to a total effective sentence of twelve years imprisonment, a $100,000 fine and five years of special parole.
The defendant thereafter appealed to the Appellate Court, claiming that the evidence was insufficient to support the convictions and that it was unconstitutional to fail to submit the materiality element of the perjury charge to the jury for its determination. State v. Paige, supra, 115 Conn.App. at 720, 974 A.2d 782. The Appellate Court reversed the judgment with respect to counts six and seven, larceny in the second degree and larceny in the first degree, respectively, for insufficient evidence and affirmed the judgment in all other respects. Id., at 752, 974 A.2d 782. With respect to the defendant's challenge to the jury instruction on perjury, the court acknowledged that the defendant was constitutionally entitled to have every element of the perjury charge submitted to the jury, that the defendant had filed a preliminary request to charge that included an instruction on the element of materiality and that the state had requested that the court instruct the jury that the element of materiality was not for its consideration. Id., at 748-51, 974 A.2d 782. Nonetheless, the Appellate Court concluded that the defendant had waived this claim by failing to object on the specific ground raised on appeal, by expressly agreeing with the proposition that materiality is a question of law for the court and should not be submitted to the jury, and by her response to the trial court when it indicated that it intended to provide such an instruction to the jury. Id., *284 at 750-51, 974 A.2d 782. The defendant's certified appeal to this court followed.
The defendant contends that she properly preserved her right to raise this issue on appeal by submitting a request to charge on the matter and that no authority requires her also to take exception to a charge that conflicts with such a request. The defendant acknowledges that it is possible to waive an instructional error after submitting a request to charge, but contends that her comments to the trial court, read in light of the record as a whole, demonstrate that she did not engage in the kind of unequivocal conduct that would demonstrate waiver. The defendant further contends that she should not be penalized by an error of law that was induced by the state. In response, the state contends that the defendant waived her claim by not only acquiescing to the law proffered by the state on this issue but also by affirmatively adopting the case proffered by the state as the law of the case and by failing to bring contrary authority to the court's attention. We conclude that the Appellate Court improperly determined that the defendant waived this claim.
It is well settled that rights of constitutional magnitude may be waived. See State v. Fabricatore, 281 Conn. 469, 478, 915 A.2d 872 (2007). This court specifically has concluded that "waiver of the right to require the state to prove each element of a crime may be made by counsel.. . ." (Internal quotation marks omitted.) Id., at 480, 915 A.2d 872, quoting State v. Cooper, 38 Conn.App. 661, 679, 664 A.2d 773, cert. denied, 235 Conn. 908, 665 A.2d 903 (1995), cert. denied, 517 U.S. 1214, 116 S.Ct. 1837, 134 L.Ed.2d 940 (1996); see State v. Duncan, 96 Conn.App. 533, 560, 901 A.2d 687, cert. denied, 280 Conn. 912, 908 A.2d 540 (2006); accord State v. Darryl W., 303 Conn. 353, 366, 367 n. 15, 33 A.3d 239 (2012). Waiver can be effectuated expressly or implicitly. See State v. Thomas W., 301 Conn. 724, 731-32, 22 A.3d 1242 (2011); State v. Fabricatore, supra, at 478-80, 915 A.2d 872. Applying plenary review, "[s]uch a determination by the reviewing court must be based on a close examination of the record and the particular facts and circumstances of each case." (Internal quotation marks omitted.) State v. Thomas W., supra, at 734, 22 A.3d 1242.
The following facts and circumstances of the present case are relevant to our determination of the waiver issue in the present case. The issue of materiality first arose on February 28, 2006, in connection with testimony by Neal Rogan, the attorney who had represented Cogswell and Hemingway in various civil proceedings. The state proffered Rogan's testimony in relation to count one, also alleging that the defendant had committed perjury in statements she had made in a deposition that Rogan had conducted. After the state asked Rogan what role the subject at issue had in the objective of the deposition, the defendant objected on grounds of relevance. When the state explained that the question was intended to establish the materiality of the alleged perjury, the defendant again objected, arguing that Rogan could not testify about materiality. Thereafter, the trial court excused the jury and asked the state for an offer of proof as to the substance of Rogan's testimony on this subject. The state explained, inter alia, that Rogan needed to testify regarding the materiality of the defendant's statement as it related to the purpose of the deposition because materiality was an element of the state's case for the jury to decide. Defense counsel objected to this line of testimony, arguing: "I think materiality is a legal issue which the judge can charge on and so forth. On the other hand, the issue is whether it's material to the process and *285 not whether it was material to [Rogan] and what he was doing. I mean, do we then bring in [the defendant's] lawyer to say that it wasn't material as far as he was concerned? It just seems to me that I don't think you can prove materiality by asking him why he was doing what he was doing." In response, the state explained that "Rogan is going to tell the jury why this particular falsehood was material to the purpose of the deposition" and emphasized the necessity of this testimony to prove to the jury an essential element of perjury. Defense counsel then reiterated his previous concerns: "I don't think you prove materiality by proving what he's attempting to do. . . . To have him define materiality which is a legal issue by saying what he was trying to prove. . . . I just think if you let a lawyer who has a financial interest in this thing testify as to what he thought was material and what is material legally, it just seems to me, it really gets us in serious problems." Ultimately, the trial court informed the state: "[I]f you want him to testify about some materiality, that's a legal claim ascounsel is correct. You need to direct me to some case law that is insightful on this issue and I'll review it."
On the next day of trial, March 1, 2006, just before Rogan's testimony continued, the state provided the court with a copy of a century old case, State v. Greenberg, 92 Conn. 657, 103 A. 897 (1918). That case did not address the permissible scope of witness testimony on materiality. Rather, in Greenberg, the defendant challenged his conviction for perjury, claiming that the trial court improperly had failed to charge the jury that the testimony set forth in the information upon which the charge of perjury was based was not material to the issue involved in the trial and improperly left to the jury the decision of whether the alleged perjured testimony was material. Id., at 660, 103 A. 897. This court held: "In this case all of the facts which the [s]tate claimed proved that the testimony was material were before the court, and if the jury found these facts to have been established it became the duty of the court to instruct the jury whether the testimony was material or not. The question of materiality, as we think, is, on the better reason and the better authority, in the final analysis, a question of law. . . . The court was in error in leaving the determination of the materiality of the testimony to the jury, but the error was harmless, since the verdict of the jury meant that it found the testimony to be material, and we think this was the conclusion which the court should have reached." (Citations omitted.) Id., at 660-61, 103 A. 897.
After the trial court confirmed that the state had provided a copy of Greenberg to the defendant, the state recommenced its direct examination of Rogan, asking him what he was trying to accomplish in the defendant's deposition. Defense counsel objected, arguing that the matter was not relevant and, further, that "in terms of the issue of materiality, the case given, the Greenberg case, indicates that . . . it's a legal question for the court and. . . ." The court cut defense counsel off and overruled his objection. Defense counsel later renewed his objection to this line of questioning, stating: "Again, relevance. It's a legal issue. It goes to the process itself and not [Rogan's] view of it, and I don't think he can give an opinion on an issue that is for the court." The state argued in response that "the jury has to decide materiality if the court sends it to the jury so I'd submit that how this question relates to the object indicates how it is material. And materiality is allowed under the cases cited." The court sustained the defendant's objection and directed the state to rephrase the question.
*286 On March 6, 2006, the defendant submitted a preliminary request to charge, which included an instruction on perjury providing that the state must prove all of the elements of the charge beyond a reasonable doubt, including whether the statement made by the defendant was material to the proceedings. On that same date, the defendant also filed a motion for a judgment of acquittal on various counts including the three perjury counts, claiming that the statement at issue in each perjury count "was, as a matter of law, not material to the proceeding in question."
On March 8, 2006, the trial court heard argument on the defendant's motion for judgment of acquittal and on both parties' requests to charge. The court noted that, with respect to the three perjury charges, the state had requested the court to instruct the jury that materiality was not for it to decide and that as a matter of law the statements at issue were material to the proceeding in which they were made. The court then asked the defendant whether she had any objection. Defense counsel responded: "The answer is yes. That's what Greenberg said. On the other hand, [in] Greenberg . . . they appeared to have the whole transcript of the trial in front of them and so forth. I don't think in this particular case . . . you have sufficient evidence on your own to decide as a matter of lawit was my claim that as a matter of law, there isn't enough. . . . [Y]ou know, if in fact there are sufficient facts before the court, I would agree with Greenberg, it's strictly a matter of law.
"I just don't think the record here is sufficient for the court to make that determination as a matter of law. Inevitably, it's a mixedit can be described as a mixed issue of fact and law. The court there in Greenberg, they said exactly what [the witness'] testimony was. . . . [T]hey said that [it] went to his credibility in the trial . . . so as a matter of law, it shouldn't have gone to the jury." Defense counsel then explained why he thought the evidence was insufficient and asserted that this argument also related to the defendant's "initial claim that as a matter of law it is not material."
The trial court then inquired of the state whether, in light of the defendant's arguments, "the material issue should go to the jury. That's the gravamen of the argument, whether or not [the jury] should make a finding if theif it was material pursuant to the elements of the crime, or the court should tell [the jury] as you request as a matter of law pursuant to what you believe in Greenberg that that element has been satisfied." The state replied that, according to Greenberg or State v. Fasano, 119 Conn. 455, 462-63, 177 A. 376 (1935), another case that counsel had discussed, materiality was a matter for the court. The court did not state at that time how it intended to instruct the jury. The court did note, however, a concern about the sufficiency of the evidence regarding materiality on the perjury charges for purposes of the motion for a judgment of acquittal.
The following day, March 9, 2006, the trial court noted on the record that it had granted the defendant's motion for a judgment of acquittal on counts one and three alleging perjury but had denied the motion in all other respects. Defense counsel then inquired about a "discussion yesterday concerning the background state of the record. I'd like to know whether the court is going to charge the jury as a matter of law thaton count two, that the alleged perjury was material to the. . . ." Before defense counsel could complete his sentence, the court stated: "The answer to that is yes." Defense counsel responded: "Okay. Thank you."
*287 Closing arguments then ensued, following which the trial court gave instructions to the jury, including the one with respect to count two alleging perjury that we previously have noted, stating that the court had determined that the alleged statement was, as a matter of law, material to the proceeding in which it had been made. At the end of the jury charge, neither party took an exception to the instructions as given. The jury thereafter returned a verdict of guilty on nine of the ten counts submitted to it, including count two alleging perjury. See footnote 1 of this opinion.
The defendant timely filed a motion for a new trial, claiming, inter alia, "errors in the charge." In the supporting memorandum of law she later filed, the defendant pointed to a perjury case in which the United States Supreme Court squarely held, in accordance with fundamental principles that a criminal defendant has a constitutional right to demand that a jury find him or her guilty of all of the elements of a crime charged and, accordingly, that a trial court is prohibited from incorporating into its jury instructions evidentiary presumptions that have the effect of relieving the state of its burden of proving every essential element of the crime, that materiality, even if a mixed question of fact and law, must be decided by the jury.[2]United States v. Gaudin, 515 U.S. 506, 513-14, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). In opposing the motion, the state argued that Greenberg was the law before the trial court at the time of trial, that this court never has overruled the law as stated therein and that the materiality issue in the present case was different than in Gaudin, the former being a pure question of law whereas the latter was a mixed question of fact and law. The trial court orally denied the motion, stating in relevant part: "The motion for a new trial *288 based on the court's instructions pursuant to the law as counsel for the state has placed on the record, that issue was argued at some length in the course of this trial. The court, relying and trusting instruction based upon the issue of materiality as an issue of law not fact, State v. Greenberg [supra, 92 Conn. at 660-61, 103 A. 897]."
With the specific circumstances of the present case in mind, we note the following additional principles relevant to the defendant's claim that she did not waive her right to contest the jury instruction. The issue of waiver in the context of a claim of instructional error typically arises when considering whether a defendant is entitled to review of an unpreserved claim. See, e.g., State v. Collins, 299 Conn. 567, 596-97, 10 A.3d 1005, cert. denied, U.S., ___ U.S. ___, 132 S.Ct. 314, 181 L.Ed.2d 193 (2011); State v. Brewer, 283 Conn. 352, 358-60, 927 A.2d 825 (2007). In such cases, the defendant has failed to follow one of the two routes by which he or she could preserve the claim of instructional error, by either submitting a written request to charge on the matter at issue or taking an exception immediately after the charge is given. See Practice Book § 16-20; State v. Darryl W., supra, 303 Conn. at 367-68, 33 A.3d 239. We never have required, however, a defendant who has submitted a request to charge also to take an exception to a contrary charge, and such a requirement would contravene the plain language of § 16-20.
Nonetheless, even if a claim of instructional error is initially preserved by compliance with Practice Book § 16-20, the defendant may thereafter engage in conduct that manifests an intention to abandon that claim. See State v. Thomas W., supra, 301 Conn. at 732, 22 A.3d 1242 (waiver found when, after defendant objected to proposed instruction, he expressed satisfaction with trial court's proposed curative instruction and did not thereafter object to instruction as given); State v. Mungroo, 299 Conn. 667, 676, 11 A.3d 132 (2011) (waiver found when, after reviewing court's charge that differed from defendant's proposed instruction at charging conference, defense counsel withdrew his request to charge and accepted trial court's charge); State v. Whitford, 260 Conn. 610, 632-33, 799 A.2d 1034 (2002) (waiver found when defendant objected to initial instruction, trial court issued supplemental instruction after receiving input from defense counsel, and defense counsel did not object to instruction as given); State v. Jones, 193 Conn. 70, 87-88, 475 A.2d 1087 (1984) (waiver found when defendant timely took exception after instruction was given, court consulted with defendant in fashioning supplemental instruction and defendant raised no further objection to either initial charge or supplemental instruction). In each of these cases, the trial court had taken some curative action to address the defendant's initial objection or the defendant had engaged in affirmative conduct that unequivocally demonstrated his intention to abandon the previously preserved objection, such as withdrawing a request to charge.
In the present case, the evidence is at best ambiguous as to whether the defendant effectively withdrew her request to charge that initially preserved this issue for appeal. Significantly, there were several issues relating to materiality that the defendant raised before the trial court. First, the defendant contended that Rogan could not testify as to the legal question of whether the statement at issue was material. It is evident that the defendant essentially was contending that Rogan could not offer an opinion as to that ultimate issue. See Conn.Code Evid. § 7-3(a) (witness *289 generally barred from offering opinion on ultimate issue); see also State v. Finan, 275 Conn. 60, 66, 881 A.2d 187 (2005) ("an ultimate issue [is] one that cannot reasonably be separated from the essence of the matter to be decided [by the trier of fact]" [internal quotation marks omitted]). Second, the defendant contended that the court should determine, as a matter of law, that there was insufficient evidence to prove materiality, thus, entitling her to a judgment of acquittal. See Practice Book § 42-40 ("[a]fter the close of the prosecution's case in chief or at the close of all the evidence, upon motion of the defendant or upon its own motion, the judicial authority shall order the entry of a judgment of acquittal as to any principal offense charged . . . for which the evidence would not reasonably permit a finding of guilty"). Third, the defendant's request to charge sought to submit to the jury the issue of materiality if the court concluded that the state had presented sufficient evidence on that matter. We note that the first two positions are wholly consistent with the defendant's request to charge the jury on the issue of materiality.
The defendant never withdrew her request to charge and there is nothing in the record to suggest that the trial court understood her to have done so. Although the defendant appears to have agreed that Greenberg was a correct statement of the law as a general matter, she also made clear her view that the rule applied in that case did not apply in the present case. In support of that position, the defendant not only asserted that the evidence of materiality was insufficient to allow the court to decide this issue as a matter of law, she also took the position, consistent with the authority on which she relies on appeal, that the issue of materiality in the present case was a mixed question of fact and law that must be presented to the jury. See footnote 2 of this opinion. The trial court's last question to the state before deciding what instruction to give clearly indicated that it understood the defendant's position to be that materiality must be decided by the jury. The court stated that the "gravamen of the argument" between the parties was "whether or not [the jury] should make a finding . . . if it was material pursuant to the elements of the crime, or the court should tell them as [the defendant] request[s] as a matter of law pursuant to what [the defendant] believe[s] in Greenberg that that element has been satisfied." The court's explanation for denying the defendant's motion for a new trial similarly indicates that it understood the parties to disagree as to whether Greenberg applied.
Contrary to the view of the state and the Appellate Court, we ascribe no weight to the fact that, after the court responded in the affirmative to defense counsel's inquiry as to whether the court was going to charge the jury as the state had requested, defense counsel responded: "Okay. Thank you." In so responding, defense counsel simply may have been acknowledging the court's answer rather than indicating his acquiescence to or approval of the charge to be given. Moreover, given that the defendant consistently had argued that the jury should decide materiality unless the court determined that there was insufficient evidence as a matter of law to submit the perjury charge to the jury, we cannot view this ambiguous comment as effectively withdrawing the request to charge the jury on that issue. Cf. State v. Akande, 299 Conn. 551, 559, 11 A.3d 140 (2011) (defendant responded in negative when trial court inquired whether counsel had "other thoughts," "any comments," and "anything else" relating to instruction). Finally, to the extent that there was an obligation to bring binding law to the trial court's attention that conflicted with Greenberg, that obligation was equally *290 born by the state and the defendant. Therefore, we conclude that the Appellate Court improperly determined that the defendant waived her objection to the court's instruction.
In light of this conclusion, the defendant's perjury conviction must be reversed and the case remanded for a new trial on that charge. As the state now properly concedes, this court is bound by United States v. Gaudin, supra, 515 U.S. at 506, 115 S.Ct. 2310. Although prior to Gaudin this court long had recognized the fundamental principles on which Gaudin relied and since has cited Gaudin for these very principles; see State v. Faust, 237 Conn. 454, 469, 678 A.2d 910 (1996); we never have expressly overruled State v. Greenberg, supra, 92 Conn. at 657, 103 A. 897, or otherwise addressed the question of whether a defendant is entitled to have a jury decide materiality in a perjury case. We now take the occasion to expressly overrule Greenberg in so far as it concluded that materiality presents a question of law for the court to decide.
The judgment of the Appellate Court is reversed only as to the defendant's conviction of perjury on count two of the substitute information and the case is remanded to that court with direction to remand the case to the trial court for a new trial on that charge; the judgment is affirmed in all other respects.
In this opinion the other justices concurred.
NOTES
[1] The defendant was convicted of the following charges: perjury in violation of § 53a-156 (a) (count two); tampering with or fabricating physical evidence in violation of General Statutes § 53a-155 (a)(2) (count four); forgery in the second degree in violation of General Statutes § 53a-139 (a)(1) (count five); larceny in the second degree in violation of General Statutes §§ 53a-119 (2) and 53a-123 (a)(5) (count six); larceny in the first degree in violation of General Statutes §§ 53a-119 (2), 53a-121 (b) and 53a-122 (a)(2) (count seven); two counts of larceny in the first degree in violation of §§ 53a-119 (1), 53a-121 (b) and 53a-122 (a)(2) (counts eight and nine); and two counts of larceny in the first degree in violation of §§ 53a-119 (1) and 53a-122 (a)(2) (counts ten and twelve). The jury found the defendant not guilty on count eleven, larceny in the first degree in violation of §§ 53a-119 (2) and 53a-122 (a)(2), and the court, Holden, J., granted the defendant's motion for judgment of acquittal of two other counts of perjury in violation of § 53a-156 (a) (counts one and three).
[2] The court explained: "Deciding whether a statement is `material' requires the determination of at least two subsidiary questions of purely historical fact: (a) `what statement was made?' and (b) `what decision was the agency trying to make?' The ultimate question: (c) `whether the statement was material to the decision,' requires applying the legal standard of materiality (quoted above) to these historical facts. What the [g]overnment apparently argues is that the [c]onstitution requires only that (a) and (b) be determined by the jury, and that (c) may be determined by the judge. We see two difficulties with this. First, the application-of-legal-standard-to-fact sort of question posed by (c), commonly called a `mixed question of law and fact,' has typically been resolved by juries. . . .

"The second difficulty with the [g]overnment's position is that it has absolutely no historical support. If it were true, the lawbooks would be full of cases, regarding materiality and innumerable other `mixed-law-and-fact' issues, in which the criminal jury was required to come forth with `findings of fact' pertaining to each of the essential elements, leaving it to the judge to apply the law to those facts and render the ultimate verdict of `guilty' or `not guilty.' We know of no such case. Juries at the time of the framing could not be forced to produce mere `factual findings,' but were entitled to deliver a general verdict pronouncing the defendant's guilt or innocence." (Citations omitted.) United States v. Gaudin, 515 U.S. 506, 512-13, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). The court did acknowledge that some courts had required the trial court to decide the element of materiality in perjury cases specifically, but noted a lack of any consistent historical tradition. Id., at 517-18, 115 S.Ct. 2310.
It appears that this court's decision in Greenberg rested on the presumption that the jury could find the subsidiary questions of purely historical fact and then the judge could decide the ultimate question of materiality by applying the law to these facts. See State v. Greenberg, supra, 92 Conn. at 660-61, 103 A. 897("[i]n this case all of the facts which the [s]tate claimed proved that the testimony was material were before the court, and if the jury found these Facts to have been established it became the duty of the court to instruct the jury whether the testimony was material or not" [emphasis added]).