******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v*. JENNIFER JOHNSON
(SC 19062)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald and Espinosa, Js.

*Argued October 29, 2014—officially released March 31, 2015*

*Annacarina Jacob*, senior assistant public defender, for the appellant (defendant).

*Melissa L. Streeto*, senior assistant state's attorney, with whom, on the brief, were *Kevin Lawlor*, state's attorney, and *Paul O. Gaetano*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

McDONALD, J. The defendant, Jennifer Johnson, was convicted of possession of narcotics in violation of General Statutes § 21a-279 (a), conspiracy to possess narcotics in violation of General Statutes §§ 53a-48 (a) and 21a-279 (a), conspiracy to possess narcotics with intent to sell in violation of General Statutes §§ 53a-48 (a) and 21a-277 (a), possession of less than four ounces of marijuana in violation of General Statutes (Rev. to 2007) § 21a-279 (c), and possession of drug paraphernalia in violation of General Statutes (Rev. to 2007) § 21a-267 (a). The narcotics convictions related to oxycodone pills that the police had found on the defendant's girlfriend, Tamara Burbridge, to whom they had been prescribed, and in the apartment that the two women shared. On appeal to the Appellate Court, the defendant challenged her conviction on the three narcotics offenses. The Appellate Court reversed the conviction of conspiracy to possess narcotics on double jeopardy grounds as a lesser included offense of conspiracy to possess narcotics with intent to sell, but affirmed the judgment in all other respects.[1] *State* v. *Johnson*, 137 Conn. App. 733, 766, 49 A.3d 1046 (2012). In her certified appeal to this court, the defendant seeks reversal of her conviction on the two remaining narcotics charges on the basis of instructional error. Specifically, this court granted the defendant's petition for certification to appeal limited to the following questions: "1. Did the Appellate Court properly determine that the defendant implicitly waived her instructional claims as to nonexclusive possession and constructive possession even though she had filed a request to charge for the instructions? [and] 2. If the answer to the first question is in the negative, was the error harmless?" *State* v. *Johnson*, 307 Conn. 927, 55 A.3d 568 (2012). We conclude that the defendant did not engage in the type of affirmative conduct necessary to demonstrate that she effectively withdrew her request to charge. We further conclude that the instruction on possession was deficient, but that the impropriety was harmless beyond a reasonable doubt in light of the evidence and the state's theory of the case. Accordingly, we affirm the Appellate Court's judgment.

The record reveals the following undisputed facts and procedural history.[2] During the relevant period, the defendant lived with Burbridge in a one bedroom apartment on the second floor of a three-family house in Seymour. In March, 2008, Wendy Carroll, a recovering drug addict who had known the defendant for approximately twenty years, reported to the police that the defendant and Burbridge had been selling oxycodone pills from the apartment. Carroll stated that she had come forward because the two women had sold narcotics to Carroll's nephew. The police thereafter enlisted Carroll's help as a confidential informant to conduct

controlled buys from the defendant and Burbridge. On three separate occasions—March 26, March 27 and April 24, 2008—Carroll reported that Burbridge had called to let her know that Burbridge had filled prescriptions and had oxycodone to sell. Thereafter, on each occasion, the police gave Carroll marked bills to make the buys, patted her down for contraband and money, observed Carroll enter the apartment building, and emerge shortly thereafter bearing two to four pills of Roxicodone (a brand name for the narcotic oxycodone) but none of the marked bills. Carroll reported that the defendant had exchanged the pills for the money in the two March buys, and that Burbridge had done so in the April buy. The police declined to act at that time to execute a search warrant at the apartment. They monitored the apartment building, however, and observed nonresidents entering and exiting from the entrance to the second and third floors of the building within minutes, activity that indicated to them that drug activity was taking place.

In June, 2008, Carroll reported to the police that she had confirmed with Burbridge that Burbridge had just refilled a prescription and had more oxycodone for sale. On the basis of that information and the previous transactions, the police obtained a search warrant for the apartment. When they arrived at the building, they encountered the defendant and Burbridge in the driveway and patted the women down before proceeding to the apartment. The police discovered on the defendant a device for smoking marijuana and a small sum of money, and on Burbridge they found a prescription bottle in her name containing forty-six Roxicodone pills that had been filled the previous day. In the apartment, the police discovered scores of empty, partially full and full prescription bottles for various narcotic and nonnarcotic substances, prescribed to either the defendant or Burbridge. The police seized from the living room coffee table fourteen prescription bottles, a small metal box containing two pills, and marijuana. The police also seized from the bedroom, in dresser drawers or on bedside tables, numerous other prescription pill bottles in either the defendant's or Burbridge's name.

Tests confirmed the presence of oxycodone, a highly addictive narcotic pain killer, in: (1) the pills presented to the police by Carroll from each of the controlled buys; (2) the two pills in the small metal box found on the living room coffee table; (3) pills from three prescription bottles in Burbridge's name found in the bedroom; and (4) pills from the prescription bottle in Burbridge's name found on her person.

The state thereafter charged the defendant in an eight count long form information. Counts one through six pertained to the June, 2008 search: possession of narcotics with intent to sell; conspiracy to possess narcotics with intent to sell; possession of narcotics; conspiracy

to possess narcotics; possession of less than four ounces of marijuana; and possession of drug paraphernalia. Counts seven and eight pertained to the two March, 2008 controlled buys, both alleging sale of narcotics in violation of § 21a-277 (a). Although evidence was adduced that the prescriptions for Burbridge's oxycodone had been issued by more than one physician and had been filled at more than one pharmacy, there was no allegation that the prescriptions had been forged or illegally prescribed.

At trial, the defendant's theory was that Carroll had lied out of a motivation for revenge, that Carroll had produced pills that she had stolen from the apartment, and that the police had not sufficiently monitored Carroll during the controlled buys. The defendant testified that Carroll was a drug addict, that she previously had lived with the defendant, that Carroll had been evicted by the defendant due to Carroll's possession of crack cocaine, and that Carroll still had a key to the apartment. The defendant attempted to impeach Carroll's testimony and motive by eliciting testimony from the police that Carroll previously had worked for the police, that she had been paid for each pill that she had produced from the controlled buys, and that she only would have been paid if she succeeded in making the buys. The defendant also elicited an admission from Carroll that she had lied during her initial testimony about not having used drugs in recent years, but Carroll denied ever having been evicted by the defendant or having a key to the apartment. The defendant conceded that she had smoked marijuana to treat pain related to disabilities for which she receives Social Security benefits and that she had been prescribed medications for those disabilities. The defendant acknowledged that Burbridge had oxycodone in the apartment in March, April, and June, 2008, and that Burbridge regularly filled a prescription for oxycodone that was issued to treat pain. The defendant denied that she had ever sold oxycodone, and stated that, to her knowledge, Burbridge had not sold oxycodone to Carroll in March or April, 2008.

The jury found the defendant not guilty of the two charges relating to the controlled buys and the count of possession of narcotics with intent to sell relating to the evidence seized during the execution of the warrant. It found the defendant guilty on the remaining counts. The trial court rendered judgment in accordance with the verdict.

On appeal to the Appellate Court, the defendant challenged her narcotics conviction on evidentiary, constitutional and instructional grounds. *State* v. *Johnson*, supra, 137 Conn. App. 736. With respect to the instructional claim at issue in this certified appeal, the defendant contended that the trial court had failed to charge the jury properly on constructive and nonexclusive possession, for which the defendant had filed a request to

charge. Id., 758. In response, the state contended that the defendant had negated her request to charge and implicitly waived any objection under *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011), because defense counsel had been given an opportunity to review and comment on the court's proposed and final drafts of the charge, had asked for changes and otherwise expressly indicated that he had no objection to the instruction, and had not objected to the charge actually given. *State* v. *Johnson*, supra, 759.

The Appellate Court agreed with the state and therefore declined to review the instructional claim. Id., 760–63. It held that "post-*Kitchens*, where defense counsel formally acquiesces to a charge that he has had an adequate opportunity to review, he waives on behalf of the defendant any later appellate claim that might have otherwise been preserved by an earlier request to charge." Id., 763. The court reversed the judgment of conviction on the count of conspiracy to possess narcotics on double jeopardy grounds, but affirmed the judgment as to the remaining charges. Id., 766. This certified appeal followed.

I

Our rules of practice provide that "[a]n appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. . . ." Practice Book § 42-16. In *State* v. *Kitchens*, supra, 299 Conn. 462–63, the defendant had not undertaken either method, and he therefore sought review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), whereby a party may seek relief for an unpreserved constitutional claim. This court determined that, in such circumstances, an implied waiver is manifested under the following conditions: "[W]hen the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal." *State* v. *Kitchens*, supra, 482–83. The court explained that affirmative acceptance meant that counsel would need to express satisfaction with the instruction, not merely acquiesce to it. Id., 483 and n.23.

In concluding that the defendant in that case implicitly waived any purported instructional defect, the court noted both the repeated statements by defense counsel indicating his affirmative acceptance of the proposed instruction and counsel's failure to file a request to charge. Id., 498. With respect to the latter, the court

noted: "Although we agree that the effect of filing a request to charge is to preserve properly a claim of instructional error, we note, with respect to the present case, that defense counsel, by declining twice to file a request to charge in response to the court's direct invitation, indicated that he had no special concerns regarding the instructions on intent that he wished to discuss with the court." Id., 498 n.30; see also *State* v. *Akande*, 299 Conn. 551, 557–58, 11 A.3d 140 (2011) (concluding that defense counsel's express agreement to trial court's supplemental instruction constituted waiver of claim of instructional error, when "[d]efense counsel failed to submit a request to charge or to take exception to any instructional language during the trial").

Thereafter, in *State* v. *Paige*, 304 Conn. 426, 40 A.3d 279 (2012), this court explained that different circumstances are presented when a defendant has filed such a request: "The issue of waiver in the context of a claim of instructional error typically arises when considering whether a defendant is entitled to review of an unpreserved claim. . . . In such cases, the defendant has failed to follow one of the two routes by which he or she could preserve the claim of instructional error, by either submitting a written request to charge on the matter at issue or taking an exception immediately after the charge is given. . . . We never have required, however, a defendant who has submitted a request to charge also to take an exception to a contrary charge, and such a requirement would contravene the plain language of [Practice Book § 42-16].

"Nonetheless, even if a claim of instructional error is initially preserved by compliance with Practice Book § [42-16], the defendant may thereafter engage in conduct that manifests an intention to abandon that claim.[3] See *State* v. *Thomas W.*, [301 Conn. 724, 732, 22 A.3d 1242 (2011)] (waiver found when, after defendant objected to proposed instruction, he expressed satisfaction with trial court's proposed curative instruction and did not thereafter object to instruction as given); *State* v. *Mungroo*, 299 Conn. 667, 676, 11 A.3d 132 (2011) (waiver found when, after reviewing court's charge that differed from defendant's proposed instruction at charging conference, defense counsel withdrew his request to charge and accepted trial court's charge); *State* v. *Whitford*, 260 Conn. 610, 632–33, 799 A.2d 1034 (2002) (waiver found when defendant objected to initial instruction, trial court issued supplemental instruction after receiving input from defense counsel, and defense counsel did not object to instruction as given); *State* v. *Jones*, 193 Conn. 70, 87–88, 475 A.2d 1087 (1984) (waiver found when defendant timely took exception after instruction was given, court consulted with defendant in fashioning supplemental instruction and defendant raised no further objection to either initial charge or supplemental instruction). *In each of these cases, the*

*trial court had taken some curative action to address the defendant's initial objection or the defendant had engaged in affirmative conduct that unequivocally demonstrated his intention to abandon the previously preserved objection, such as withdrawing a request to charge.*" (Citations omitted; emphasis added; footnote added.) *State* v. *Paige*, supra, 442–43. In concluding that there was no such unequivocal demonstration in the case before it, the court noted that "[t]he defendant never withdrew her request to charge and there is nothing in the record to suggest that the trial court understood her to have done so." Id., 444. The court further noted that the evidence was ambiguous as to "whether the defendant effectively withdrew her request to charge that initially preserved this issue for appeal." Id.

With this heightened standard in mind, we turn to the record in the present case. The trial court provided both a "rough" draft instruction and its proposed final instruction to counsel, and asked them on several occasions to review and comment on them. The court's instruction on possession did not substitute different language for that proposed by the defendant, but instead selectively omitted certain paragraphs altogether. There was never any discussion relating to this change or this element of the offenses. The defendant never stated that she was withdrawing her request to charge on possession. After the initial draft was submitted for counsel's review, the defendant requested and successfully obtained the addition of an instruction on inconsistent statements, a matter on which the defendant also had filed a request to charge. When the court twice asked in succession whether the defendant had objections to the instructions just before the charge was given to the jury, defense counsel twice stated that he had no objection.

We are not persuaded that these facts rise to the level of the type of affirmative conduct that unequivocally demonstrated an intention to abandon the request for a more comprehensive charge on possession. The defendant reasonably could have interpreted the trial court's selective adoption of parts of her possession instruction as a purposeful rejection of the omitted language. Under *Paige*, the defendant was not required to object to the truncated instruction to preserve her request for the more comprehensive instruction. See *State* v. *Paige*, supra, 304 Conn. 443. Counsel's statement that he had no objection to the final instruction may simply have been intended to convey agreement that the language provided, much of which related to matters on which the defendant submitted no requests to charge, was a correct statement of the law, rather than satisfaction with the omission of language that defense counsel specifically had requested and reasonably could have believed had been intentionally rejected. Moreover, to infer an implied waiver under such circumstances would be to apply the same stan-

dard for preserved and unpreserved claims, contrary to *Paige*. Finally, defense counsel's request for the addition of an instruction on inconsistent statements, which defense counsel reasonably could have interpreted as having been inadvertently omitted, does not unambiguously indicate that he was effectively withdrawing his request for a more expansive instruction on possession. Accordingly, we conclude that the defendant did not abandon her request for a more comprehensive jury instruction on possession.

## II

The defendant's request to charge on possession substantially mirrored the full model jury instruction. See Connecticut Criminal Jury Instructions (Rev. to 2007) § 2.11-1. The preface to that model instruction provides in relevant part: "A complete instruction on possession may require explanations of constructive possession and nonexclusive possession if relevant to the case. Tailor this instruction according to the specific allegations of possession." The defendant contends that the trial court's instruction was incomplete and misleading because it failed to provide a complete explanation of constructive possession and omitted entirely any explanation of the different burden of proof when there is nonexclusive possession of the premises where the contraband was located. The defendant argues that the incomplete charge could have allowed the jury to conclude that she was in possession of the oxycodone simply based on her joint residence in the apartment in which Burbridge's prescription narcotics were found and her presence with Burbridge when oxycodone pills were found on Burbridge. The state concedes that its "simple theory of the case was that the defendant and Burbridge conspired to jointly possess and sell oxycodone pills from their shared apartment" and that it was proceeding under a theory of constructive possession. Nonetheless, it contends that the instruction was sufficient to guide the jury as to constructive possession and that no instruction on the heightened burden of proof for nonexclusive possession was required because the defendant did not assert a theory of defense that the drugs were Burbridge's and not hers. We agree with the defendant that the charge was incomplete and misleading.

Possession is an essential element of the two charges at issue: possession of narcotics and conspiracy to possess narcotics with intent to sell. "It is . . . constitutionally axiomatic that the jury be [properly] instructed on the essential elements of a crime charged. . . . If an improper jury instruction is of constitutional magnitude, the burden is on the state to prove harmlessness beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Padua*, 273 Conn. 138, 166, 869 A.2d 192 (2005).

In previous cases, this court has explained: "[T]o

prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. . . . [When] . . . the [narcotics are] not found on the defendant's person, the state must proceed on the theory of constructive possession, that is, possession without direct physical contact. . . . [When] the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference." (Internal quotation marks omitted.) *State* v. *Mangual*, 311 Conn. 182, 215, 85 A.3d 627 (2014); accord *State* v. *Butler*, 296 Conn. 62, 77–78, 993 A.2d 970 (2010); *State* v. *Bruno*, 293 Conn. 127, 136, 975 A.2d 1253 (2009).

"The doctrine of nonexclusive possession was designed to prevent a jury from inferring a defendant's possession of [an illegal item] solely from the defendant's nonexclusive possession of the premises where the [illegal item was] found. *State* v. *Nesmith*, 220 Conn. 628, 636 n.11, 600 A.2d 780 (1991). When the doctrine applies, an instruction focuses the jury's attention on the defendant's knowledge and intent to possess, precluding it from inferring possession from the mere fact that the defendant, along with others, occupied or had access to the premises wherein the contraband was found." (Internal quotation marks omitted.) *State* v. *Williams*, 258 Conn. 1, 7–8, 778 A.2d 186 (2001).

The trial court's instruction on possession, which adopted excerpts of the model instruction, provided as follows: "Possession means actual possession or constructive possession. Actual possession means actual physical possession, such as having the substance on one's person. *Constructive possession means having the substance in a place under one's dominion and control.* Constructive possession may be exclusive or shared by others. The latter is known as joint possession.

"Possession, whether actual or constructive, also requires that the defendant knew that she was in possession of the oxycodone; that is, that the defendant was aware that she was in possession of it, and was aware of the nature—its nature. The state must prove beyond a reasonable doubt that the defendant knew she was in possession of oxycodone.

"Now, a person acts knowingly with respect to conduct or to a circumstance described by a statute defining offense when she is aware that her conduct is of such nature or that such circumstance exists. An act is done knowingly if done voluntarily and purposely, and not because of mistake, inadvertence, or accident.

"Ordinarily, knowledge can be established only

through an inference from other proven facts and circumstances. The inference may be drawn if the circumstances are such that a reasonable person of honest intention in the situation of the defendant would've concluded that the oxycodone pills were a narcotic substance. The determinative question is whether the circumstances in the particular case form a basis for a sound inference as to the knowledge of the defendant and the transaction under inquiry." (Emphasis added.) The court gave this instruction in connection with its charge on count one, possession with intent to sell a narcotic substance, and repeated it or referred back to it in setting forth the elements of the other charges.

The defendant's request to charge included several additional paragraphs, of which we find the following particularly significant: "[A] person who, although not in actual possession, *knowingly has the power and the intention at a given time to exercise dominion or control over a thing is deemed to be in constructive possession of that item. It means having something under one's control or dominion.* As long as it is or was in a place where the defendant could, if he wishes, go and get it, it is in his possession and that possession is illegal if the defendant knew of the unlawful character of the . . . narcotics and knew of [their] presence. . . .

"The state has submitted evidence to show that the defendant had control over the premises where the narcotics . . . were found. Control of the premises gives rise to the inference of unlawful possession, and the mere access by others is insufficient to defeat this inference.

"If it is proven that the defendant is the exclusive owner of the premises, then you may infer that [she] controlled the premises. However, *when it is shown that ownership or occupancy of the premises is shared, you may no longer make this inference. The ability to control the premises must be established by independent proof.*" (Emphasis added.)

It is clear that the court's instruction on possession was deficient. The trial court's single sentence explaining constructive possession addressed the defendant's dominion and control over a place, rather than the defendant's dominion and control over the *contraband*. See General Statutes § 53a-3 (2) (defining " '[p]ossess' " for purposes of Penal Code as "to have physical possession or otherwise to exercise dominion or control over tangible property"). The court's instruction on knowledge directed the jury to consider whether the defendant knew she was in "possession" of oxycodone, but the preceding explanation of possession simply would have required the jury to find that the defendant knew that Burbridge's prescription pills were in the shared apartment.[4] Also lacking is any direction that the defendant must have intended to exercise con-

trol, which must be proved in addition to the defendant's knowledge of the presence of the narcotics. See *State* v. *Martin*, 285 Conn. 135, 149, 939 A.2d 524 ("[t]o prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it" [internal quotation marks omitted]), cert. denied, 555 U.S. 859, 129 S. Ct. 133, 172 L. Ed. 2d 101 (2008); *State* v. *Hill*, 201 Conn. 505, 516, 523 A.2d 1252 (1986) ("[t]he essence of exercising control is . . . the act of being in a position of control coupled with the requisite mental element"). Finally, although, as a general matter, one could infer dominion and control over contraband when a defendant exercises exclusive dominion and control over the place in which the contraband is found, our case law, previously cited, clearly establishes that more is required when there is joint possession of the premises. In *United States* v. *McKissick*, 204 F.3d 1282 (10th Cir. 2000), cited favorably by this court in *State* v. *Williams*, supra, 258 Conn. 8, the United States Court of Appeals for the Tenth Circuit explained: "Constructive possession may be established by circumstantial evidence and may be joint among several individuals. . . . Possession is constructive, rather than actual, when the defendant knowingly has ownership, dominion or control over the narcotics and the premises where the narcotics are found. . . . See also *United States* v. *Ruiz-Castro*, 92 F.3d 1519, 1531 (10th Cir. 1996) (defining constructive possession of a narcotic as an appreciable ability to guide the destiny of the drug) . . . . In cases involving joint occupancy of a place where contraband is found, mere control or dominion over the place in which the contraband is found is not enough to establish constructive possession. . . . In such cases, the government is required to present direct or circumstantial evidence to show some connection or nexus individually linking the defendant to the contraband." (Citations omitted; internal quotation marks omitted.) *United States* v. *McKissick*, supra, 1291. A complete instruction on constructive possession would have been especially important in a case in which the narcotics had been lawfully prescribed to the person with whom the defendant shared the apartment. Therefore, on its face, the instruction as given would have permitted the jury to find that the defendant's joint possession of the premises and her knowledge that Burbridge was in possession of her prescribed oxycodone would be a sufficient basis on which to find the defendant in possession of the oxycodone.

We are not persuaded by the state's argument that the defendant was not entitled to an instruction on nonexclusive possession because she did not point the finger at Burbridge and claim that she was merely an innocent bystander, but instead asserted that neither of them had engaged in any wrongdoing. We first

observe that the defendant's testimony left open the possibility that Burbridge could have sold narcotics to Carroll without the defendant's knowledge.[5] We further note that, contrary to the state's view, the jury would have been free to credit Carroll's testimony only in part and as a result conclude that there was sufficient evidence of Burbridge's participation in the controlled buys, but not the defendant's. See *State* v. *Andrews*, 313 Conn. 266, 313, 96 A.3d 1199 (2014) ("[t]he trier of fact may credit part of a witness' testimony and reject other parts" [internal quotation marks omitted]); *State* v. *Nathan J.*, 294 Conn. 243, 262, 982 A.2d 1067 (2009) ("a defendant may be entitled to jury instructions reflecting inconsistent theories of defense even if evidence presented by the defendant directly contradicts one of the theories of defense").

Having concluded that the instruction was deficient, we turn to the question of whether the state proved that the improper instruction was harmless beyond a reasonable doubt. "[T]he test for determining whether a constitutional error is harmless . . . is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (Internal quotation marks omitted.) *State* v. *Fields*, 302 Conn. 236, 245–46, 24 A.3d 1243 (2011). "When a jury is misinstructed on an essential element of a crime and a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed." (Internal quotation marks omitted.) *State* v. *Padua*, supra, 273 Conn. 167.

We are persuaded that the deficient instruction was harmless beyond a reasonable doubt. The jury's verdict on the two conspiracy charges reflects that it found that the state had proved beyond a reasonable doubt that the defendant and Burbridge jointly agreed to possess and to sell narcotics. This required the jury to find that the defendant had the specific intent to sell oxycodone. One part of the court's instruction on those charges stated that: "The mere knowledge, acquiescence, or approval of the object of the agreement without cooperation or agreement to cooperate, however, is not sufficient to make one a party to a conspiracy to commit the criminal act. Mere presence at the scene of the crime, even when coupled with knowledge of the crime, is insufficient to establish guilt of the conspiracy to commit the crime." Moreover, with respect to those charges, the trial court instructed the jury that the overt acts in furtherance of the conspiracy were "possession with intent to sell a narcotic substance by . . . Burbridge" and "the possession of narcotics by . . . Burbridge." There was no dispute that Burbridge was in possession, both actual and constructive, of oxycodone.[6] Therefore, the jury's verdict on the conspiracy charges would not have been influenced by the deficient possession instruction and clearly evidenced that the

jury did not fully accept the defendant's theory of the case.

In addition to these facts, we note that all of the oxycodone found in the apartment was in places over which the defendant and Burbridge presumably would have had shared access—a box on the living room coffee table and a drawer in the bedroom they jointly occupied. The defendant herself testified that she and Burbridge both put their pills in the small metal box found on the living room table; two oxycodone pills were found in that box. Although the defendant testified that oxycodone had been prescribed to Burbridge, the defendant neither offered evidence that her access to the pills was restricted in any way nor argued that such an inference was permissible from the evidence. Indeed, the defendant's testimony reflected specific knowledge regarding Burbridge's prescriptions in that, in confirming to the prosecutor on cross-examination that a prescription bottle containing forty-six Roxicodone pills had been found on Burbridge, the defendant responded: "Yeah, because she only got fifty, and I guess she took a couple."

The defendant's argument that the error was not harmless relies almost exclusively on her contention that, if properly instructed, the jury reasonably could have concluded that she did not have exclusive possession of the oxycodone. Although that may be true, as the defendant's own request to charge reflects, constructive possession may be nonexclusive.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] In the state's certified appeal from the Appellate Court's judgment, Docket No. SC 19139, which we heard concurrently with the defendant's certified appeal, this court held that the Appellate Court improperly ordered the trial court to hold a resentencing hearing after the Appellate Court vacated the defendant's conviction and sentence for the lesser included offense of conspiracy to possess narcotics on double jeopardy grounds. *State* v. *Johnson*, 316 Conn. 34, A.3d (2015).

[2] We note that the Appellate Court opinion recites the facts reasonably found by the jury for purposes of evaluating the sufficiency of the evidence to include the defendant's participation in the actual sale of narcotics, despite the fact that the jury found the defendant not guilty of sale of narcotics, assuming the possibility of a compromise verdict. *State* v. *Johnson*, supra, 137 Conn. App. 744–45. We make no such assumption for purposes of our consideration of the issues on appeal.

[3] We note that abandonment is a manifestation of waiver. See *State* v. *Kitchens*, supra, 299 Conn. 469 ("[w]aiver is an intentional relinquishment or abandonment of a known right or privilege" [internal quotation marks omitted]).

[4] We note that, in its subsequent instruction on the charge of possession of a narcotic substance, the court stated that "the state must prove beyond a reasonable doubt that the defendant knowingly possessed *or had under her control oxycodone*." (Emphasis added.) The court then repeated its earlier charge on possession.

[5] The testimony elicited from the defendant about Burbridge's sale of narcotics came in the following exchange on cross-examination:

"[The Prosecutor]: So it's your claim that . . . Burbridge sold to . . . Carroll on [March 26]?"

"[The Defendant]: Not to my knowledge, no. [Burbridge] was doing nothing unlawful at all."

[6] Because the jury found the defendant not guilty of sale of narcotics or

possession of narcotics with intent to sell, it is unclear to what extent the jury credited Carroll's testimony with regard to the defendant's role in the sale of narcotics. The jury may have inferred the intent to sell from the numerous prescription bottles located throughout the apartment, as well as the fact that Burbridge had obtained prescriptions for oxycodone from more than one physician and filled those prescriptions at more than one pharmacy within one month's time. In its closing argument, the state emphasized these facts as evidence of intent to sell.

---